COURT OF APPEALS OF VIRGINIA


Present:  Judges Baker, Willis and Bray
Argued at Norfolk, Virginia


ANDRE L. WILLIAMS

v.        Record No. 2216-94-1          OPINION BY
                                 JUDGE JERE M. H. WILLIS, JR.
COMMONWEALTH OF VIRGINIA              NOVEMBER 21, 1995

          FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                    Randolph T. West, Judge

          Benjamin M. Mason (Mason & Mason, on brief),
          for appellant.

          Steven A. Witmer, Assistant Attorney General
          (James S. Gilmore, III, Attorney General, on
          brief), for appellee.


     On appeal from his convictions of possession of cocaine with

intent to distribute and importation of cocaine into the

Commonwealth, Andre L. Williams contends (1) that the trial court

erred in denying his motion to suppress the cocaine found on his

person and (2) that the evidence is insufficient to prove he

imported more than one ounce of cocaine into the Commonwealth.

The judgments of the trial court are affirmed.

     On both January 30 and February 6, 1993, Williams purchased

a round-trip ticket from Newport News to New York City, all

travel to be completed in one day.  He paid cash for the tickets

in five, ten and twenty-dollar used bills.  He traveled under the

names Johnson and Henderson, respectively.  U.S. Air ticket

agent, Brenda Rummings, recognized Williams and realized he was

using different names.  Her suspicion aroused, she reported this

information to her supervisor, Cathy Reiger.

Both Ms. Rummings and Ms. Reiger met with Officer Safranek of the airport police and gave him the information about Williams' travel and his description. Safranek went to the final check-in waiting area, where the two women pointed out Williams. Safranek telephoned the Newport News Police Department and arranged to meet Sergeant Dawes from vice-narcotics at the airport at 8:00 p.m. They confirmed that Williams was on the return flight to Newport News and was wearing the clothing that Rummings had described.

After Williams disembarked from the plane, Safranek approached him and said, "Excuse me, Mr. Henderson. May I talk to you for a minute?" Williams' reply was not understandable. Safranek repeated his request. Williams replied, "No," gave a "head fake," and ran. He was caught by Sergeants Dawes and Davenport. Immediately upon being apprehended, Williams said, "It's in my coat pocket." Williams was removed to a prearranged area, where he was searched. A package wrapped in brown tape was removed from his sweatshirt pocket, and another package was removed from his crotch. Both packages contained cocaine.

Williams was advised of his <u>Miranda</u> rights. In response to the officers' questions, Williams

> stated that the stuff was his, that he had gone to New York to pick it up, that he had gone up there with $10,000 and this was what he had come back with. He stated there was approximately 19 ounces of powder and one ounce of crack cocaine. . . . He also stated this was his second trip, that on the first trip, he brought back about half that amount. He stated . . . that he

carried all his business to Norfolk.

Sergeant Dawes testified that based on his fifteen years of experience working in narcotics and on several thousand arrests, he suspected narcotics activity after speaking with Safranek. He based his suspicion upon his knowledge (1) that New York was a source for narcotics, (2) that Newport News was used as an entry point for narcotics into the Commonwealth, (3) that the use of aliases was common among persons involved in drug activity, and (4) that paying cash in small bills for plane tickets was indicative of drug activity. Dawes also testified that the amount of cocaine found on Williams was inconsistent with personal use.

Williams contends that the trial court erred in denying his motion to suppress as evidence the cocaine found on his person. He argues that Safranek had neither reasonable suspicion to detain him nor probable cause to arrest him when approaching him in the passenger waiting area. However, Safranek's approach required neither predicate. "Law enforcement officers do not violate the Fourth Amendment merely by approaching an individual on the street, identifying themselves, and asking the individual questions." Buck v. Commonwealth, 20 Va. App. 298, 301-02, 456 S.E.2d 534, 535 (1995) (citing Florida v. Royer, 460 U.S. 491, 497 (1983)). Safranek effected no seizure by approaching Williams. He sought merely to engage Williams in a consensual encounter.

Upon Safranek's inquiry, Williams ran. "Although flight alone may not supply sufficient reason to suspect a person of criminal activity, it may otherwise color apparently innocent conduct and, under appropriate circumstances, give rise to reasonable suspicion of criminal activity." Id. at 303, 456 S.E.2d at 536.

Based on his experience as a narcotics detective, the information he received from Safranek, and the fact that Williams ran when approached by the police, Sergeant Dawes was justified in stopping Williams to investigate his activity. "Under those circumstances, the physical detention of [Williams] was reasonable and lawful." Id.

After the officers restrained him, Williams immediately told them, "It's in my coat pocket." This information, along with all the other circumstances, gave the officers probable cause to believe Williams possessed narcotics, and justified his arrest and search without a warrant. "When an officer has probable cause to arrest a person, the officer may search the person . . . ." Id. at 304, 456 S.E.2d at 537. Therefore, the cocaine found on Williams' person was admissible at trial.

Williams next contends that the trial court erred in finding the evidence sufficient to support his conviction of transporting cocaine into the Commonwealth. He argues that no evidence proved that his flight was non-stop. Because Williams failed to make this argument at trial, we will not consider it on appeal. Rule

5A:18.

We affirm the judgments of the trial court.

<u>Affirmed</u>.
