COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Willis and Annunziata
Argued by teleconference


COMMONWEALTH OF VIRGINIA
                                    MEMORANDUM OPINION[*] BY
v.    Record No. 0661-99-1    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                       AUGUST 19, 1999
ANTHONY LAP BROWN


               FROM THE CIRCUIT COURT OF YORK COUNTY
                    N. Prentis Smiley, Jr., Judge

          Marla Graff Decker, Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          brief), for appellant.

          Deborah Wagner (David Holland's Law Group,
          L.L.C., on brief), for appellee.


     Anthony Lap Brown (Brown) was indicted for possession of

cocaine, in violation of Code § 18.2-250.  Brown filed a

pretrial motion to suppress evidence of a crack-cocaine pipe

found in his pocket, contending that it was discovered as a

result of an unlawful search of his person.  The trial court

granted the motion, and the Commonwealth appealed pursuant to

Code § 19.2-398(2).  For the following reasons, we reverse the

trial court's decision and remand for further proceedings.

---

     [*] Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

On an appeal from a trial court's ruling on a suppression motion, we view the evidence in the light most favorable to the party prevailing below, in this case the defendant.  See Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).  However, "'[u]ltimate questions of reasonable suspicion and probable cause . . . are reviewed de novo on appeal.'"  McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (en banc) (quoting Ornelas v. United States, 517 U.S. 690, 691, 116 S. Ct. 1657, 1659, 134 L.Ed.2d 911 (1996)).  Similarly, whether a seizure occurred at all is a question for this Court to review de novo.  See id. at 198, 487 S.E.2d at 261.

The evidence established that on October 2, 1998, at approximately 10:15 p.m., Brown was walking through the Yorkshire Townhouse complex in York County, Virginia.  Deputy Sheriff Mattis (Mattis) approached Brown and asked him where he was going.  Brown stated that he was walking home.  The deputy knew from prior experience that Brown was not walking in the direction of his house and that he also did not live in the Yorkshire Townhouse complex.

Mattis asked Brown "if he had any drugs, weapons, or illegal contraband" on his person.  The defendant told Mattis that he had a knife in his back pants pocket.  Mattis asked the defendant if he "could search him," and the defendant said

-

"yes."  During the search, Mattis found a pocketknife inside Brown's back pocket.  He also found a cigarette box inside the left front pocket.  Inside the cigarette box, Mattis found a "three-inch crack pipe."  During the encounter, the deputy used a flashlight to "illuminate" Brown.  Mattis did not draw his weapon nor did he tell the defendant to remain where he was.

The trial court found that there was no evidence of criminal activity and, therefore, the deputy did not have a reasonable articulable suspicion to stop the defendant. Although the trial court recognized that "this Court's been reversed on this issue before on an appeal by the Commonwealth," the court suppressed the evidence because it concluded the search constituted an unreasonable seizure.  Pursuant to Code § 19.2-398(2), the Commonwealth appealed the trial court's ruling.

## II.

The Commonwealth argues that the trial court erroneously focused on whether there was a reasonable suspicion of criminal activity when the officer approached the defendant.  The Commonwealth contends that the evidence established a consensual encounter between Deputy Mattis and the defendant, "followed by defendant's knowing and voluntary consent to a search of his person."  Because the search was consensual, the Commonwealth concludes there was no Fourth Amendment violation.  We agree.

-

Fourth Amendment jurisprudence recognizes three categories of police-citizen confrontations, including the following: "(1) consensual encounters, (2) brief, minimally intrusive investigatory detentions, based upon specific, articulable facts, commonly referred to as Terry stops, and (3) highly intrusive arrests and searches founded on probable cause." Wechsler v. Commonwealth, 20 Va. App. 162, 169, 455 S.E.2d 744, 747 (1995). As the United States Supreme Court noted in Terry,

> [o]bviously, not all personal intercourse between policemen and citizens involves "seizures" of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred.

Terry v. Ohio, 392 U.S. 1, 19 n.16, 88 S. Ct. 1868, 1879 n.16, 20 L.Ed.2d 889 (1968).

A Terry stop occurs "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554, 100 S. Ct. 1870, 1876-77, 64 L.Ed.2d 497 (1980). Examples of circumstances that might indicate a Fourth Amendment "seizure" include the following:

> the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

-

_Id._ at 553-54, 100 S. Ct. at 1876-77. Accordingly, "[a]s long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification." _Id._

In the instant case, the trial court ruled that when Deputy Mattis approached Brown and asked him questions, he was seized within the meaning of the Fourth Amendment. However, Mattis's actions did not create a seizure. It is well settled that "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen . . . ." _Florida v. Royer_, 460 U.S. 491, 497, 103 S. Ct. 1319, 1324, 75 L.Ed.2d 229 (1983) (plurality opinion); _see_ _also_ _Williams v. Commonwealth_, 21 Va. App. 263, 266, 463 S.E.2d 679, 680 (1995); _Buck v. Commonwealth_, 20 Va. App. 298, 301-02, 456 S.E.2d 534, 535 (1995).

Moreover, "a consensual encounter occurs when police officers approach persons in public places to ask them questions, provided a reasonable person would understand that he or she could refuse to cooperate." _Payne v. Commonwealth_, 14 Va. App. 86, 88, 414 S.E.2d 869, 870 (1992) (internal quotations

-

and citations omitted).  Consensual encounters "need not be predicated on any suspicion of the person's involvement in wrongdoing, and remain consensual as long as the citizen voluntarily cooperates with the police."  Id. (internal quotations and citations omitted).

Here, Deputy Mattis asked Brown whether he had drugs, weapons or illegal contraband.  Mattis did not touch Brown or draw his weapon.  Mattis did not tell Brown to remain where he was.  Defendant can point to no act which, either implicitly or expressly, restrained his liberty.  See Mendenhall, 446 U.S. at 554, 100 S. Ct. at 1877.[1]  Brown gave his consent to the search, which was not limited in scope, and he did not revoke that consent.  In these circumstances, Brown was not seized for purposes of the Fourth Amendment.[2]

Because the defendant was not seized, and the defendant consented to the subsequent search of his person, the

---

[1] Mattis's use of a flashlight does not affect the consensual nature of his encounter with Brown.  Contrary to the trial court's ruling, the evidence established that Deputy Mattis used the flashlight to "illuminate" the defendant because it was dark.  Even assuming that the deputy shone his flashlight in Brown's face, this act does not compel a finding that a Fourth Amendment seizure occurred.  See Baldwin v. Commonwealth, 243 Va. 191, 199, 413 S.E.2d 645, 649-50 (1992) (holding that the use of a floodlight "was no more an 'intimidating' show of authority than the 'presence of a police officer driving parallel to a running pedestrian'").

[2] The same conclusion was reached by a panel of this Court in Commonwealth v. Taylor, No. 1298-98-1 (October 6, 1998), a case involving substantially similar facts.

-

defendant's crack pipe should not have been excluded.  The trial court's ruling on the motion to suppress is reversed.

<u>Reversed.</u>