COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judges Elder and Bray
Argued at Chesapeake, Virginia


DENNIS W. JOHNSON
                                        MEMORANDUM OPINION* BY
v.    Record No. 0878-99-1    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                          MARCH 7, 2000
COMMONWEALTH OF VIRGINIA


               FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
                         E. Everett Bagnell, Judge

            Denise Winborne, Assistant Public Defender,
            for appellant.

            Marla Graff Decker, Assistant Attorney
            General (Mark L. Earley, Attorney General, on
            brief), for appellee.


     Dennis W. Johnson (appellant) was convicted in a bench

trial of driving after having been declared an habitual

offender, second or subsequent offense, in violation of Code

§ 46.2-357.  On appeal, he argues the trial court erred in

denying his motion to suppress the evidence because he was

"seized" in violation of the Fourth Amendment.  For the

following reasons, we affirm.

                                I.

     On appeal from a trial court's ruling on a suppression

motion, we view the evidence in the light most favorable to the

_____

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

party prevailing below, in this case the Commonwealth.  See Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).  However, "'[u]ltimate questions of reasonable suspicion and probable cause . . . are reviewed de novo on appeal.'"  McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (en banc) (quoting Ornelas v. United States, 517 U.S. 690, 691 (1996)).  Similarly, whether a seizure occurred at all is a question for this Court to review de novo.  See id. at 198, 487 S.E.2d at 261.

Viewed in this light, the evidence established that on June 10, 1998, at approximately 1:00 p.m., Officer Mark Deavers (Deavers) of the Portsmouth Police Department was dispatched to a residence in Portsmouth regarding a "domestic assault and battery" involving "a person by the name of Dennis Johnson." Before Deavers arrived at the scene, Portsmouth dispatchers advised that the subject "[left] the scene, turned on Town Point Road [and] headed towards the Suffolk city limits."  The dispatcher provided a description of the vehicle.  At that time, Deavers contacted Suffolk dispatch to broadcast a BOLO ("be on the lookout") for the suspect so that the officer could "speak to Mr. Johnson."

According to the BOLO, if the Suffolk police came into contact with the suspect, the Portsmouth police wanted him held for questioning related to the domestic assault.  Dispatch reported that a "domestic assault had taken place" in

-

Portsmouth; that the suspect was Dennis Johnson; and that the suspect had driven away in a 1985 Buick, license plate number ZEN-5827. No warrant was issued for appellant's arrest, and Deavers never came in contact with appellant that day.

Officer P.E. Araojo (Araojo) of the Suffolk Police Department was on routine patrol when he received the BOLO from dispatch. At approximately 1:20 p.m., Araojo saw a blue Buick, with license plate number ZEN-5827, driven by a black male, that matched the description by dispatch. The officer followed the vehicle to a convenience store parking lot and the individual, later identified as appellant, got out of his car and went into the store. Araojo notified "other units in the area that [he] was out with that vehicle" described in the BOLO. The officer parked his car and as he was getting out appellant exited the convenience store.

Araojo approached appellant and asked to speak with him. Appellant "agreed" and went back to the rear of his car. Appellant said he had come from Portsmouth where he had been "seeing his wife." Araojo testified as follows:

> I asked if he had any identification, driver's license, at which point he handed me a Virginia identification card. I asked him if he had any problems with me patting him down for any weapons, anything like that, at which point he said no. He turned around, and when I began to pat him down his hands were on the trunk of his vehicle. He looked over his shoulder, he started to turn. At which point I told him to go ahead

-

and keep his hands there.  He became a
little resistant.

Concerned for his own safety, Araojo handcuffed appellant and
completed the pat-down frisk.  He found no weapons on
appellant's person.

Araojo contacted dispatch to determine whether appellant
had any outstanding warrants.  When dispatch reported that there
were no warrants for appellant's arrest, the officer immediately
removed the handcuffs.  However, dispatch reported that "the
officer in Portsmouth did want some . . . field interview
information from Mr. Johnson [so they could] finish their
investigation."  Araojo advised appellant that he was not under
arrest but needed to get some field interview information,
including appellant's name, address, date of birth, social
security number, and "any kind of identifying information other
than what's on the license."  Appellant again agreed to speak
with the officer and stated that "he wanted to cooperate."
Araojo and appellant went to the officer's car, and they sat in
the front seat to complete the interview.

Officer Araojo again advised appellant that he was not
under arrest, and he asked for appellant's driver's license.
Appellant told the officer that "he had a restricted license"
and "he was in the process of taking care of some problems with
DMV."  Araojo contacted dispatch and learned that appellant "was

-

declared a habitual offender revoked."  The officer handcuffed
and arrested appellant.

At trial, appellant moved to suppress the evidence, arguing
that he was "seized" in violation of the Fourth Amendment.
However, appellant did not allege what evidence should be
suppressed.  The trial court denied the motion, stating:

> Well, in this case, the Court is going
> to rule that Officer Araojo acted on
> information that he had, made a reasonable
> stop of this vehicle.  And the actions he
> took in the Court's opinion, based on the
> testimony I've heard, were reasonable under
> the facts and circumstances as they existed.
>
> . . . [Appellant] was stopped for a
> reasonable basis by Officer Araojo.  He was
> operating a motor vehicle.  Officer Araojo
> certainly had the right to inquire as to who
> he was and was he properly licensed, and
> once he made that inquiry he found out that
> no, he wasn't properly licensed, that he was
> an habitual offender, and placed him under
> arrest for being so.

The trial court convicted appellant of driving after having been
declared an habitual offender, second or subsequent offense, in
violation of Code § 46.2-357.

## II.

Appellant contends that once the officer placed him in
handcuffs, he was "illegally seized" for purposes of the Fourth
Amendment.  Araojo did not find any weapons as a result of the
pat-down frisk, and the officer subsequently learned that there
were no outstanding warrants for his arrest.  At that time,
appellant argues, he should have been free to leave, but was not

-

because the officer still had possession of his identification card.

Fourth Amendment jurisprudence recognizes three categories of police-citizen confrontations, including the following:  "(1) consensual encounters, (2) brief, minimally intrusive investigatory detentions, based upon specific, articulable facts, commonly referred to as Terry stops, and (3) highly intrusive arrests and searches founded on probable cause." Wechsler v. Commonwealth, 20 Va. App. 162, 169, 455 S.E.2d 744, 747 (1995).  "[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen . . . ." Florida v. Royer, 460 U.S. 491, 497 (1983) (plurality opinion); see also Williams v. Commonwealth, 21 Va. App. 263, 266, 463 S.E.2d 679, 680 (1995); Buck v. Commonwealth, 20 Va. App. 298, 301-02, 456 S.E.2d 534, 535 (1995).

"[A] consensual encounter occurs when police officers approach persons in public places to ask them questions, provided a reasonable person would understand that he or she could refuse to cooperate." Payne v. Commonwealth, 14 Va. App. 86, 88, 414 S.E.2d 869, 870 (1992) (internal quotations and citations omitted).  Consensual encounters "need not be predicated on any suspicion of the person's involvement in

-

wrongdoing, and remain consensual as long as the citizen voluntarily cooperates with the police."  Id. (internal quotations and citations omitted).

In the instant case, the trial court concluded that Officer Araojo made "a reasonable stop of [appellant's] vehicle" to investigate the BOLO.  However, ultimate questions of reasonable suspicion and probable cause involve questions of law and fact that we review de novo on appeal.  See McGee, 25 Va. App. at 197-98, 487 S.E.2d at 261 (citations omitted).  Based on our de novo review of the record, the evidence established that Officer Araojo did not initiate a vehicle stop and that the initial encounter with appellant was consensual in nature.  Accordingly, the trial court correctly denied appellant's motion to suppress, albeit for the wrong reason.  See Frye v. Commonwealth, 231 Va. 370, 389, 345 S.E.2d 267, 281 (1986).

Officer Araojo's contact with appellant began as a consensual encounter.  When the officer first approached appellant and asked to speak with him, appellant "agreed" and went back to the rear of his car.  Appellant said he had come from Portsmouth where he had been "seeing his wife."  Araojo asked appellant for his "identification, driver's license," at which point he voluntarily handed the officer an identification card.  Araojo then asked appellant for his consent to conduct a pat-down frisk for weapons, and appellant consented.  These

-

actions are entirely consistent with a consensual encounter, which does not implicate the Fourth Amendment.

Because appellant "became a little resistant" during the pat-down frisk, out of concern for safety the officer handcuffed him and completed the frisk. After learning from dispatch that there were no warrants for appellant's arrest, Officer Araojo removed the handcuffs. Although appellant was "seized" within the meaning of the Fourth Amendment when the officer handcuffed him, the brief seizure was part of what became an investigatory detention on the heals of a consensual encounter. See Thomas v. Commonwealth, 16 Va. App. 851, 857, 434 S.E.2d 319, 323 (1993) ("Brief, complete deprivations of a suspect's liberty, including handcuffing, 'do not convert a stop and frisk into an arrest so long as the methods of restraint used are reasonable to the circumstances.'"), aff'd en banc, 18 Va. App. 454, 444 S.E.2d 275 (1994).

When the officer removed the handcuffs and continued to speak with appellant, the consensual nature of the encounter did not cease. Araojo advised appellant that he was not under arrest and proceeded to conduct a field interview based upon the BOLO dispatch from Portsmouth. Appellant again agreed to speak with the officer and stated that "he wanted to cooperate." Araojo and appellant went to the officer's car, and they sat in the front seat to complete the interview. It was during this

-

consensual encounter Officer Araojo learned that appellant's driver's license had been revoked.

Nonetheless, appellant contends that he was not free to leave after the handcuffs were removed because the officer had possession of his identification card. Assuming, without deciding, that appellant was seized while the officer retained his "identification" card,[1] there was no evidence subject to suppression. From the beginning of the initial consensual encounter, Officer Araojo knew appellant's identity. No additional information or evidence was gained from any subsequent seizure, and the officer could have learned from the information received during the first consensual encounter that appellant's license had been revoked. See Bramblett v. Commonwealth, 257 Va. 263, 275, 513 S.E.2d 400, 408 (1999) (denying motion to suppress because "[e]ven assuming one of the officers briefly entered the room [in violation of the Fourth Amendment] . . ., no search was conducted and no evidence was seized"). More importantly, the officer had reasonable suspicion from the onset of the encounter to believe that appellant had just left Portsmouth where he had been involved in

---

[1] In Richmond v. Commonwealth, 22 Va. App. 257, 468 S.E.2d 708 (1996), we held that, despite the consensual nature of the encounter, the defendant in that case was "seized" within the meaning of the Fourth Amendment because the officer had the defendant's driver's license and did not return it. Because Code § 46.2-104 prohibits a vehicle operator from driving without a license, we concluded that the defendant was no longer free to leave. See id. at 261, 468 S.E.2d at 710.

-

an assault and was wanted for questioning by Portsmouth police. Thus, in light of the BOLO reported by the Portsmouth Police Department, Officer Araojo had a reasonable, articulable suspicion to detain appellant for investigatory purposes. <u>See</u> <u>Layne v. Commonwealth</u>, 15 Va. App. 23, 26, 421 S.E.2d 215, 217 (1988) (noting that "[a]n officer may, consistent with the Fourth Amendment, detain a person, based on a reasonable and articulable suspicion, to investigate past criminal activity").

In sum, we conclude that the encounter between Officer Araojo and appellant was not based upon a vehicle stop, but rather was a consensual encounter. The fact that Araojo retained appellant's identification card does not require reversal because there was no additional evidence to suppress. Accordingly, we affirm the trial court's judgment.

<u>Affirmed.</u>