COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Felton, Judges Elder and Humphreys
Argued at Richmond, Virginia


BRIAN LAMONT KING

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0513-11-2              CHIEF JUDGE WALTER S. FELTON, JR.
                                                         MAY 8, 2012
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Richard D. Taylor, Jr., Judge

Catherine French, Supervising Assistant Public Defender (Office of
the Public Defender, on brief), for appellant.

John W. Blanton, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Following the denial of his motion to suppress by the Circuit Court of the City of Richmond

("trial court"), Brian Lamont King ("appellant") entered a conditional guilty plea and was convicted

of possession of cocaine with the intent to distribute in violation of Code § 18.2-248.  On appeal,

appellant contends that the trial court erred in denying his motion to suppress, arguing that the

officer had neither reasonable articulable suspicion of criminal activity to detain him nor probable

cause to search him.  For the following reasons, we affirm the judgment of the trial court.

I.  BACKGROUND

When reviewing the "denial of a suppression motion, we review the evidence 'in the light

most favorable to the Commonwealth, giving it the benefit of any reasonable inferences.'"  Glenn v.

Commonwealth, 49 Va. App. 413, 416, 642 S.E.2d 282, 283 (2007) (en banc) (quoting Kyer v.

Commonwealth, 45 Va. App. 473, 477, 612 S.E.2d 213, 215 (2005) (en banc)), aff'd, 275 Va. 123,

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

654 S.E.2d 910 (2008). So viewed, the evidence showed that around 7:30 p.m. on November 6, 2009, Richmond City Police Officers Custer and Ferguson observed a parked car containing four occupants in an area known for a high incidence of criminal and illegal drug activity.[1] As they drove their police cruiser past the parked car, all four occupants "sat back" and "slouched down" in their seats. Officer Custer recognized one of the men in the car, Long, who was in the rear passenger seat. Officer Custer knew Long from frequent contacts in the past. The officers turned their cruiser around and stopped behind the parked car. When Officer Custer approached the car to speak with the occupants, he noticed appellant, who was in the front passenger seat, "turn his body away from [Officer Custer] as he was sitting in the seat and make a stuffing motion with his right hand inside of his mouth." Based on his training and experience, Officer Custer suspected that appellant was "trying to swallow drugs or conceal drugs in [his] mouth." Officer Custer testified that, at the time, he thought it was "very suspicious especially the way [appellant] did it. It wasn't as if he was just throwing a chip in his mouth or chewing a piece of gum. It was him turning and stuffing as if he was trying to conceal himself and stuff the item into his mouth."

After appellant stepped out of the car, Officer Custer performed a protective pat down of appellant's outer clothing for weapons. He then asked appellant what he had in his mouth. In a muffled tone, appellant denied having anything in his mouth. However, Officer Custer testified that he saw "a large bulge in [the] left side of [appellant's] cheek." Officer Custer asked appellant to open his mouth. When appellant opened his mouth, Officer Custer "observed a clear plastic baggy, which appeared to contain an off-white, rock-like substance, which [he] believed to be crack

---

[1] Officer Custer, who had been employed by the Richmond Police Department for three years at the time of his encounter with the car at issue, estimated between fifty and seventy-five drug arrests had been made in the "general area" of that particular block during "[his] time as an officer in that area."

- 2 -

cocaine." After Officer Custer told appellant numerous times to spit out whatever was in his mouth, appellant eventually did so. Appellant was then arrested for possession of cocaine.[2]

Prior to trial, appellant asked the trial court to suppress the evidence of the cocaine that he spit from his mouth, arguing that Officer Custer unlawfully searched his mouth without probable cause to believe that contraband was within. The trial court denied appellant's motion to suppress that evidence, stating:

> that once the officer approaches the car and this particular defendant turns his body away and makes that [stuffing] motion, that on the basis of this officer's training and experience and his belief that this individual may be concealing drugs, what the officer did was appropriate.
>
> Moreover, when the officer talks to this defendant and his voice is muffled and the officer sees what he believes to be a bag in his mouth that the action taken by the officer was appropriate.

## II. ANALYSIS

On appeal, appellant contends that the trial court erred in denying his motion to suppress, arguing that the officer lacked reasonable articulable suspicion of criminal activity to detain him and probable cause to search him. Based on our review of the record on appeal, we conclude that the trial court did not err in denying appellant's motion to suppress the cocaine.

### A. Standard of Review

The trial court's findings of historical fact are binding on appeal "unless 'plainly wrong.'" McGee v. Commonwealth, 25 Va. App. 193, 198 & n.1, 487 S.E.2d 259, 261 & n.1 (1997) (*en banc*). However, we review *de novo* the trial court's application of defined legal standards to the particular facts of a case. Ornelas v. United States, 517 U.S. 690, 697 (1996).

---

[2] Although not relevant to the correctness of the ruling on the motion to suppress, the certificate of analysis of the contents of the baggy that appellant spit from his mouth reported that the baggy contained 3.769 grams of cocaine.

B.  Reasonable Articulable Suspicion

"The Fourth Amendment protects 'persons' from 'unreasonable searches and seizures.'"

Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004) (quoting U.S. Const.

amend. IV).

> Whether the Fourth Amendment has been violated is a
> question to be determined from all the circumstances.  Review of
> the existence of probable cause or reasonable suspicion involves
> application of an objective rather than a subjective standard.
>
> Under well-settled principles of law, police officers may
> stop a person for the purpose of investigating possible criminal
> behavior even though no probable cause exists for an arrest.  A
> stop is permissible so long as the officer has reasonable, articulable
> suspicion that criminal activity may be afoot.

McCain v. Commonwealth, 275 Va. 546, 552, 659 S.E.2d 512, 515-16 (2008) (citations

omitted).

When, as occurred here, an officer conducts an investigatory stop, the officer "must have

'a reasonable suspicion, based on objective facts, that the [person] is involved in criminal

activity.'"  Ewell v. Commonwealth, 254 Va. 214, 217, 491 S.E.2d 721, 722 (1997) (alteration in

original) (quoting Brown v. Texas, 443 U.S. 47, 51 (1979)).  "Reasonable suspicion is something

'more than an inchoate and unparticularized suspicion or hunch of criminal activity.'  However,

it is something less than probable cause."  Jackson, 267 Va. at 673, 594 S.E.2d at 598 (quoting

Illinois v. Wardlow, 528 U.S. 119, 124 (2000)).  It "requires only 'some minimal level of

objective justification' for making such a stop."  Branham v. Commonwealth, 283 Va. 273, 280,

720 S.E.2d 74, 78 (2012) (quoting I.N.S. v. Delgado, 466 U.S. 210, 217 (1984)).  "Whether an

officer has a reasonable suspicion to justify such a detention is 'based on an assessment of the

totality of the circumstances.'"  Id. (quoting Harris v. Commonwealth, 276 Va. 689, 695, 668

S.E.2d 141, 145 (2008)).  A police officer may "'draw on [his] own experience and specialized

training to make inferences from and deductions about the cumulative information available to

- 4 -

[him] that might well elude an untrained person.'" Id. (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)).

## C. Probable Cause

"'[P]robable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Jones v. Commonwealth, 277 Va. 171, 178, 670 S.E.2d 727, 731 (2009) (alteration in original) (quoting United States v. Grubbs, 547 U.S. 90, 95 (2006)).

> "Probable cause, as the very name implies, deals with probabilities. These are not technical; they are the factual and practical considerations in every day life on which reasonable and prudent men, not legal technicians, act. Probable cause exists when the facts and circumstances within the arresting officer's knowledge and of which he has reasonable trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense had been or is being committed."

Derr v. Commonwealth, 242 Va. 413, 421, 410, S.E.2d 662, 666 (1991) (quoting Saunders v. Commonwealth, 218 Va. 294, 300, 237 S.E.2d 150, 155 (1977)).

"[T]he determination whether a law enforcement officer had sufficient probable cause to seize contraband from a person in the course of a Terry [v. Ohio, 392 U.S. 1 (1968),] pat-down search requires a consideration of the totality of the circumstances surrounding the search, as well as a consideration of the officer's knowledge, training and experience." Cost v. Commonwealth, 275 Va. 246, 251, 657 S.E.2d 505, 507 (2008); see Harris v. Commonwealth, 241 Va. 146, 149, 400 S.E.2d 191, 193 (1991) (in determining whether the officer has reasonable articulable suspicion, "'due weight must be given . . . to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience'" (quoting Terry, 392 U.S. at 27)); Hollis v. Commonwealth, 216 Va. 874, 877, 223 S.E.2d 887, 889 (1976) (in determining whether probable cause exists, we focus on "what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control").

"When an officer has probable cause to arrest a person, the officer may search the person, particularly where the evidence is of a highly evanescent nature." Buck v. Commonwealth, 20 Va. App. 298, 304, 456 S.E.2d 534, 537 (1995); see Williams v. Commonwealth, 21 Va. App. 263, 463 S.E.2d 679 (1995) (holding search of Williams prior to formal arrest permissible where officers had probable cause to believe Williams possessed illegal narcotics).

D.  Analysis

Here, considering the totality of the circumstances, the facts were sufficient to establish both reasonable suspicion for appellant's detention at the time appellant was removed from the car and probable cause to search him when Officer Custer ordered him to open his mouth.

When the officers first encountered appellant and his companions, they were patrolling a high crime, high drug area after dark. Officer Custer testified he knew that fifty to seventy-five prior drug arrests had occurred in the area of that particular block. As he and Officer Ferguson drove by, Custer observed that the car's four occupants "sat back" and "slouched down" in their seats. He also observed someone he recognized from numerous prior encounters, Long, in the rear passenger seat "wiping his face with his hand." Officer Custer approached the group on foot and engaged in a consensual encounter during which he asked Long, in a "[f]riendly tone," "hey, what are you guys doing[?]" A second or two after Long responded, "[N]othing[,] we are just chillin'," Officer Custer observed appellant "turn his body away from [Custer] as he was sitting in the seat and make a stuffing motion with his right hand inside of his mouth." "It wasn't as if he was just throwing a chip in his mouth or chewing a piece of gum. It was him turning and stuffing as if he was trying to conceal himself and stuff the item into his mouth." Officer Custer said he had encountered "this kind of behavior before," "approximately three to five times," and that in his experience, "[u]sually it's a sign of somebody trying to swallow drugs or conceal drugs in their mouth." The totality of the circumstances, viewed in light of Officer Custer's

experience, were sufficient to provide him with reasonable suspicion to believe criminal activity was afoot and that appellant was involved in it. Thus, the trial court properly concluded the subsequent detention of appellant was reasonable under the Fourth Amendment.

Officer Custer's investigation served to confirm rather than dispel the suspicions which gave rise to his decision to detain appellant, and he developed probable cause to search. Although he detected nothing suspicious in his frisk of appellant's person and clothing, he noted an obvious bulge in appellant's cheek. When he asked appellant about the bulge, appellant responded, in a muffled voice, that "he didn't have anything and he didn't know what [Officer Custer] was talking about." From Officer Custer's training and experience, he was aware that individuals often hide illegal drugs in their mouths making it easier to swallow the contraband, if necessary, to avoid detection. Officer Custer also explained to the trial court that it could be fatal for a person to swallow the large amount of narcotics found in appellant's mouth. Appellant's obvious lie about not having anything in his mouth—in conjunction with Officer Custer's knowledge of the area, his other observations of appellant's behavior, and his personal experience that drug possessors often attempt to hide drugs from police in their mouths—gave him probable cause to order appellant to open his mouth.

Other states considering similar cases have upheld police officers' authority to conduct a warrantless search of a defendant's mouth in the exigent circumstances presented here, where there was a likely destruction of evidence and potential harm to an individual ingesting large amounts of drugs concealed in that person's mouth.

> "When illegal drugs are ingested to conceal them from law enforcement, a reasonable police officer cannot know, for certain, the method of packaging the drug. As a result, it is not unreasonable to assume the drug might not be securely packaged so as to avoid its dissipation in the ingester's system, with resulting probable toxic effects. Therefore, . . . it is precisely *because* the police did not know how the heroin was packaged that exigent circumstances justified a warrantless search and seizure. The

- 7 -

exigencies in this case included both possible destruction of
evidence and potential harm to defendant."

State v. Alverez, 111 P.3d 808, 815-16 (Utah Ct. App. 2005) (quoting State v. Hodson, 866 P.2d

556, 561 (Utah Ct. App. 1993), rev'd on other grounds, 907 P.2d 1155 (Utah 1995)), aff'd, 2006

Utah LEXIS 196 (Utah 2006); accord State v. Holton, 975 P.2d 789 (Idaho 1999); State v.

Harris, 505 N.W.2d 724 (Neb. 1993); State v. Lomack, 545 N.W.2d 455 (Neb. Ct. App. 1996);

State v. Moore, 734 N.E.2d 804 (Ohio 2000); State v. Taplin, 676 P.2d 504, 505-06 (Wash. Ct.

App. 1984). Based on the record before us on appeal, we conclude that the trial court did not err

in finding that Officer Custer's warrantless search of appellant's mouth did not violate the Fourth

Amendment.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court denying appellant's

motion to suppress the cocaine and affirm his conviction of possession of cocaine with intent to

distribute.

Affirmed.