PRESENT:  All the Justices

NAKIA DURHAM

<table>
<tr><td></td><td>OPINION BY</td></tr>
<tr><td>v.  Record No. 230599</td><td>JUSTICE THOMAS P. MANN</td></tr>
<tr><td></td><td>AUGUST 1, 2024</td></tr>
</table>

COMMONWEALTH OF VIRGINIA


The General Assembly has not criminalized the possession of an open container of

alcohol when driving a car.  Pursuant to Virginia Code § 18.2-323.1(A), it is "unlawful for any

person to *consume* an alcoholic beverage *while driving* a motor vehicle upon a public highway of

the Commonwealth" (emphasis added).[1]  The statute goes on to clarify that when a driver is

found with (1) an open container of alcohol in the passenger compartment, (ii) with its contents

at least partially removed, and (iii) the driver exhibits "physical characteristics" consistent with

drinking alcohol, there is a "rebuttable presumption" that the driver has consumed alcohol in

violation of the law.

In recent years, the Court of Appeals has examined how this presumption is analyzed in a

Fourth Amendment context.  The issue here boils down to one inquiry: when a police officer

---

[1] The entirety of Code § 18.2-323.1 reads,

A.  It is unlawful for any person to consume an alcoholic beverage while driving a motor vehicle upon a public highway of the Commonwealth.

B.  Unless the driver is delivering alcoholic beverages in accordance with the provisions of § 4.1-212.1, a rebuttable presumption that the driver has consumed an alcoholic beverage in violation of this section shall be created if (i) an open container is located within the passenger area of the motor vehicle, (ii) the alcoholic beverage in the open container has been at least partially removed, and (iii) the appearance, conduct, odor of alcohol, speech, or other physical characteristic of the driver of the motor vehicle may be reasonably associated with the consumption of an alcoholic beverage.

Code § 18.2-323.1 is distinct from the crime of driving while intoxicated, which is defined in Code § 18.2-266.

identifies a driver with an open container of alcohol in the car, when considering the totality of the circumstances, could this create enough suspicion to search that car for further evidence of drinking while driving? Or must the officer also be satisfied that the other prongs of Code § 18.2-323.1(B) are in play, namely that the container is partially empty or that the driver appears to have been drinking, to establish a "rebuttable presumption" of the violation before the car may be searched?

In two unpublished opinions, *McEachin* and *Branch*, the Court of Appeals held that the three-prong presumption in Code § 18.2-323.1 should be considered in deciding whether there is enough evidence to justify a vehicle search. *See McEachin v. Commonwealth*, No. 0543-22-1, 2023 Va. App. LEXIS 488, at *7-10 (Va. Ct. App. July 25, 2023); *Commonwealth v. Branch*, No. 0132-22-1, 2022 Va. App. LEXIS 245, at *7-9 (Va. Ct. App. June 21, 2022). In *McEachin*, law enforcement found a mostly empty liquor bottle on the car floor by the front passenger seat but could not establish the third "element" of Code § 18.2-323.1(B), that the driver showed signs of drinking, leading the panel to conclude that a vehicle search could not be justified. *McEachin*, 2023 Va. App. LEXIS 488, at *2, *7-9. The *Branch* decision followed a similar logic when it affirmed the trial court's suppression determination. "Assuming the open container contained alcohol that was at least partially removed," the *Branch* court wrote, "the Commonwealth did not establish Code § 18.2-323.1(B)'s rebuttable presumption because the officers did not testify that Branch's appearance or conduct evidenced alcohol consumption." *Branch*, 2022 Va. App. LEXIS 245, at *7. The Court of Appeals in this case, however, broke with *McEachin and Branch* and employed the traditional "totality of the circumstances" probable cause analysis in affirming the trial court. *See Durham v. Commonwealth*, No. 0650-22-1, 2023 Va. App. LEXIS 477, at *10 (Va. Ct. App. July 25, 2023).

2

The facts of this case present a scenario not unlike *McEachin* and *Branch*.  Law enforcement, under the misconception that possessing open containers while driving was illegal, used the presence of an open container in a front cupholder to justify a search of Appellant Nakia Durham's car.  Their search uncovered a concealed firearm, the possession of which led to Durham's convictions in the Circuit Court of the City of Norfolk.  Durham now argues that the search violated his Fourth Amendment protections.  He contends, therefore, that the firearm should have been excluded from evidence and his convictions reversed.  Today, we answer this question for ourselves and agree with the Court of Appeals that the traditional "totality of the circumstances" probable cause approach prevails.

BACKGROUND

I.   THE SEARCH

On the night of March 26, 2021, Officer Labat of the City of Norfolk Police Department was patrolling outside a housing complex when he noticed an unfamiliar car, a Honda Pilot, parked in the lot.  Officer Labat checked the car's license plate against the Virginia Department of Motor Vehicles database and determined that the car belonged to Nakia Durham, whose license was flagged as suspended.  Thirty minutes later, Officer Labat encountered Durham's car again and initiated a traffic stop in a nearby 7-Eleven parking lot on suspicion of driving with a suspended license.

Officer Labat and his partner, Officer Gilley, exited their squad car and approached Durham's vehicle.  As Officer Gilley approached the passenger's side, Officer Labat paused and peered through the back windshield.  He observed four people inside the car: a passenger in the front seat, two passengers in the back seat, and Durham, the driver.  Everyone in the car sat still except for Durham, who twisted rightwards toward the center console while maintaining eye

3

contact with Officer Labat through the side-view mirror. From his vantage point behind the car, Officer Labat could only see Durham's upper torso. Durham's hands were obscured from view.

Officer Labat approached the driver's side window to speak with Durham. As soon as Durham rolled down the window, Officer Labat was hit with the odor of alcohol coming from inside the car. In the center cupholder closest to the passenger seat, Officer Labat spotted a Styrofoam cup filled with an "amber clear" liquid, possibly liquor. The officer inquired about the cup, and Durham handed it to him through the window. Officer Labat sniffed the liquid, believed it to be alcohol, then dumped it out in the parking lot.

The officers returned to their squad car to run an identification check on Durham and another passenger. It was confirmed that the Honda Pilot belonged to Durham. On their way back to Durham's car, Officer Labat looked through the windows again and spotted what appeared to be a liquor bottle in the left rear footwell.

It was at this point that the officers ordered all passengers out of the car to allow them to search the passenger compartment. Inside, directly behind the driver at the foot of the back seat, Officer Labat found the liquor bottle he had seen earlier – an open bottle of Hennessy cognac that he described as "relatively full." Officer Labat removed the Hennessy bottle and placed it inside Durham's trunk, explaining that he knew liquor was expensive but wanted to keep it out of the passengers' reach. Next, Officer Labat reentered the passenger compartment and came across a second Styrofoam cup, this one with a blue liquid which smelled of alcohol, in the cupholder closest to the driver's seat. He poured out the blue liquid as well.

The officer then turned his attention to Durham's center console. When he opened the lid, he discovered a Smith & Wesson .38 Special revolver, loaded and still warm to the touch. The revolver sat at the top of the console with smaller items lining the bottom.

4

Durham was formally detained and given a *Miranda* warning. He told the officers that he was unsure who owned the revolver and denied that it belonged to him. When asked who put the revolver in the center console, Durham said that he heard the console lid close but was unsure who had opened and closed it. At no point did the officers ask for Durham's consent to search his car.

## II. THE CIRCUIT COURT

Durham pleaded not guilty to charges of possession of a firearm by a nonviolent felon, carrying a concealed weapon unlawfully, drinking while driving, and driving with a suspended license. Code §§ 18.2-308.2(A), 18.2-308, 46.2-301, 18.2-323.1. Prior to trial, Durham moved to suppress the revolver found during Officer Labat's search. Officer Labat testified at the suppression hearing that the goal of his search was to find "additional open containers," trusting that "in the State of Virginia, driving on a highway with an open container of alcohol is illegal for drinking and driving."

Durham asserted that the open containers seen in plain view did not establish probable cause to search the center console. Since possessing an open container was only a "summonsable offense" not subject to jail time, according to Durham, the search was not conducted incident to arrest. And because Officer Labat was neither afraid for his safety nor sought to preserve evidence of the alcohol he found, any further search of the car was unjustified once the alcohol in plain view was put away or disposed of.

The circuit court denied the motion to suppress. In its remarks, the circuit court explained that the totality of the circumstances – the odor, the cup in plain view, the Hennessy bottle, and the unexplained blue liquor – made it reasonable for Officer Labat to search for the source of the blue liquor. The record makes it clear that during the suppression hearing, defense

5

counsel, the Commonwealth, and the trial court all shared the arresting officer's incorrect belief that the law prohibited possessing an open container of alcohol in a vehicle while driving.

Durham's case proceeded to a bench trial a few months later. Officer Labat and Officer Gilley testified to the facts as above. At the conclusion of the Commonwealth's evidence, Durham moved to strike the evidence, arguing that the Commonwealth was unable to prove that he constructively possessed the firearm. The circuit court denied the motion. Durham then presented his sole witness, Abigail Bent, who testified that she owned the same type of Smith & Wesson .38 Special revolver, guessing that it must have fallen out of her purse when she received a ride to the hospital in Durham's car earlier. Durham renewed his motion to strike prior to closing argument and, again, it was denied.

The circuit court convicted Durham of possession of a firearm by a nonviolent felon, carrying a concealed weapon unlawfully, and drinking while driving, but acquitted Durham of driving on a suspended license. For possession of the firearm, Durham was sentenced to three years of incarceration with one year suspended. For unlawfully carrying a concealed weapon, Durham was sentenced to twelve months of incarceration, the entirety of which was suspended. For drinking while driving, Durham was ordered to pay a $50 fine. Durham appealed his firearm convictions, asserting that the circuit court erred in denying his motion to suppress and that the evidence was insufficient to sustain those convictions.

### III. THE COURT OF APPEALS

In a two-to-one decision, the Court of Appeals affirmed the judgment of the court below. *Durham*, 2023 Va. App. LEXIS 477, at *20. In his argument before the Court of Appeals, however, Durham adopted a new line of reasoning – the search of his car had been premised on Officer Labat's unreasonable mistake of law under *Heien v. North Carolina*, 574 U.S. 54 (2014),

6

and therefore its fruits should have been suppressed. Durham explained that, contrary to Officer Labat's understanding, driving with an open container by itself is lawful under the Virginia Code. And because of this, according to Durham, the presence of open containers alone did not create an inference that unlawful activity was afoot.

The Court of Appeals, assuming for the sake of argument that this reasoning was preserved, decided that the search was still justified under the totality of the circumstances. *Durham*, 2023 Va. App. LEXIS 477, at *8 n.3. While it agreed that Code § 18.2-323.1 did not prohibit open containers, it nonetheless held that "an objective officer could reasonably conclude, based on the totality of the circumstances in this record, that Durham had been drinking while driving and that the vehicle contained further evidence of such conduct." *Id.* at *12-13. The Court of Appeals also found the evidence sufficient to convict Durham of the firearm offenses. *Id.* at *18-19. The proximity of the revolver to Durham, combined with Durham's "furtive movements" toward the center console and the fact that the revolver was still warm to the touch, could lead a reasonable factfinder to conclude that Durham possessed the revolver. *Id.* at *18-19.

The dissent cogently disagreed that Officer Labat's search was constitutionally valid. *Id.* at *23-24 (Lorish, J., dissenting). Its reasoning echoed *McEachin* and *Branch*, opining that "though an officer need not tick off each factor from the list," Code § 18.2-323.1(B)'s prongs were "nevertheless relevant" to establishing a "permissible inference" of criminal activity. *Id*. at *24 (quoting Ronald J. Bacigal & Corinna Barrett Lain, Virginia Practice Series, Criminal Procedure § 17:8 (2022)). Given that the Commonwealth offered no evidence that the amber liquid in the cup was partially removed or that Durham's physical characteristics or actions

7

matched those of someone who had been drinking alcohol, the dissent concluded that the search of Durham's car ran afoul of the Fourth Amendment. *Id.* at \*25-28.

Durham appeals the Court of Appeals' suppression and sufficiency determinations to this Court.

ANALYSIS

I.  MOTION TO SUPPRESS

We first review the circuit court's denial of Durham's motion to suppress, presenting us with a mixed question of law and fact. *Jones v. Commonwealth*, 277 Va. 171, 177 (2009).  In viewing the facts of the search, this Court will defer to the circuit court's findings and tilt all reasonable inferences toward the prevailing party, the Commonwealth. *See id.* at 177-78; *McCain v. Commonwealth*, 275 Va. 546, 551-52 (2008).  The circuit court's application of such facts to our Fourth Amendment jurisprudence, however, is a question of law that this Court reviews de novo. *Jones*, 277 Va. at 177; *McCain*, 275 Va. at 552.

"When considering whether to affirm the denial of a pretrial suppression motion, an appellate court reviews not only the evidence presented at the pretrial hearing but also the evidence later presented at trial." *Commonwealth v. White*, 293 Va. 411, 414 (2017).  This is because "[a] conviction on adequate and admissible evidence should not be set aside" if the facts in their entirety support the constitutionality of the search, regardless of whether those facts are adduced pretrial or at trial. *Carroll v. United States*, 267 U.S. 132, 162 (1925) ("If the evidence given on the trial was sufficient, as we think it was, to sustain the introduction of the liquor as evidence, it is immaterial that there was an inadequacy of evidence when application was made for its return.").

8

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The facts of this case present us with a trio of Fourth Amendment events: the initial traffic stop, the search of Durham's car, and Durham's arrest. Durham only challenges the legality of the second.

Since the 1920s, our law has recognized an exception to the warrant requirement for automobile searches. *Carroll*, 267 U.S. at 153 (1925); *see Abell v. Commonwealth*, 221 Va. 607, 612 (1980) ("Warrantless searches, of course, are per se unreasonable, subject to a few well-defined exceptions."). Before making an arrest and without obtaining a search warrant, law enforcement may search a vehicle when they have probable cause to believe that the vehicle contains evidence of a crime. *Carroll*, 267 U.S. at 149; *Curley v. Commonwealth*, 295 Va. 616, 621 (2018).

The touchstone for all Fourth Amendment inquiries is ultimately one of reasonableness. *Cady v. Dombrowski*, 413 U.S. 433, 439 (1973). The probable cause inquiry is no different. It is an objective inquiry in which a court asks itself, measured from the point of view of a reasonable officer, considering the totality of the circumstances known prior to the search, whether there was probable cause to search the defendant's vehicle. *Evans v. Commonwealth*, 290 Va. 277, 287 (2015). Probable cause is a "fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)). It can be found where there is "'a reasonable ground for belief of guilt[,]' . . . particularized with respect to the person to be searched or seized," *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quoting *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)), or where "there is a fair probability that contraband or evidence of a crime will be found

9

in a particular place," *Jones*, 277 Va. at 178. It is certainly less demanding than a preponderance of the evidence standard, and it does not require that an officer believe that the search's subject is more likely guilty than innocent. *Evans,* 290 Va. at 287 (internal citations omitted). Finally, "if probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825 (1982).

Durham argues that Officer Labat lacked the requisite probable cause to search his vehicle, and therefore evidence of the revolver should have been excluded at trial.[2] The dissent in the Court of Appeals, he asserts, was correct in its opinion that Code § 18.2-323.1(B) outlined three requirements needed to establish a "permissible inference" of guilt which would have justified the search. And here, Durham argues, the Commonwealth never presented evidence establishing the third prong, that Durham himself showed signs of drinking alcohol. But such an

---

[2] The Commonwealth asks this Court to dispose of this argument for its procedural shortfalls. It asserts that Durham waived his arguments regarding the search because, as Durham concedes, the argument he advances on appeal is different from the one he made in the trial court. *See* Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling[.]") and Rule 5:25 ("No ruling of the trial court . . . or other tribunal before which the case was initially heard will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling[.]"). The dissent in the Court of Appeals concluded "that Rule 5A:18 d[id] not apply" because the Commonwealth had not raised the Rule 5A:18 bar in the Court of Appeals. *Durham*, 2023 Va. App. LEXIS 477, at *28 n.14 (Lorish, J., dissenting). Considering that one purpose of both contemporaneous objection rules is to protect the deliberative processes of trial courts by limiting the grounds of reversal to arguments actually raised, our longstanding and consistent interpretation and application of Rule 5A:18 and Rule 5:25 have allowed appellate courts the discretion to invoke the contemporaneous objection bar even when a litigant has not. Although we have the discretion do so here, we decline to resolve the case on that basis because we conclude that, given the incongruities in the Court of Appeals' decisions between *Branch* and *McEachin* and this case, addressing the merits in this instance is the best way to resolve the issue. As always, we strive to "decide cases on the *best* and narrowest grounds available." *See Commonwealth v. Swann*, 290 Va. 194, 196 (2015) (internal quotation marks and citations omitted) (emphasis added).

argument, borrowed from the reasoning of *Branch* and *McEachin*, misreads the statute and then improperly conflates the issues of probable cause for a search and the burden of proof relative to guilt and innocence.

This Court approaches every statute with the assumption that the "legislature says what it means and means what it says." *In re Woodley*, 290 Va. 482, 491 (2015); *see also City of Richmond v. VEPCO*, 292 Va. 70, 75 (2016) ("[Courts] assume that the General Assembly chose, with care, the words it used in enacting the statute."). Unless the section provides an alternative definition, words in the Code are interpreted with their ordinary meaning. *Meeks v. Commonwealth*, 274 Va. 798, 800 (2007). In Code § 18.2-323.1(B), "rebuttable presumption" means just that – a rebuttable presumption of guilt, defined as "an inference drawn from certain facts that establish a prima facie case, which may be overcome by the introduction of contrary evidence." Black's Law Dictionary 1436 (11th ed. 2019). Rebuttable presumptions are not synonymous with permissible inferences: these presumptions are relevant to factfinders at trial and the government's burden of proof, not the constitutional validity of a search by law enforcement officers in the field.[3]

Meanwhile, probable cause is decidedly "'less than evidence which would justify a condemnation' or conviction." *Brinegar v. United States*, 338 U.S. 160, 175 (1949) (quoting *Locke v. United States*, 11 U.S. 339, 348 (1813)). Though Code § 18.2-323.1(B)'s prongs may be *good indicators* that a driver has been consuming alcohol on a public highway, it is unnecessary to meet all three to justify a vehicle search. Instead, probable cause to search a car

---

[3] Rebuttable presumptions may raise permissible inferences especially as they relate to jury instructions. *See generally Sandstrom v. Montana*, 442 U.S. 510 (1979); *Wilson v. Commonwealth*, 225 Va. 33 (1983). This case is not about that. The distinction between a rebuttable presumption and a permissive inference for purposes of conviction or acquittal is not pertinent to the issues in the present case.

11

for evidence of drinking while driving remains a totality of the circumstances analysis that may be informed by an officer's training, experience, and everyday common sense. *See Cost v. Commonwealth*, 275 Va. 246, 251 (2008); *Delong v. Commonwealth*, 234 Va. 357, 366 (1987) (citing *Texas v. Brown*, 460 U.S. 730, 742 (1983) (plurality opinion)). A proper totality of the circumstances inquiry requires that courts consider the "whole picture" with an understanding that the "whole is often greater than the sum of its parts." *Wesby*, 583 U.S. at 60-61. When facts or factors are viewed in isolation, it becomes easy to both overlook the bigger picture and miss key inferences to be gleaned from the smaller details. *See id.* Though we empathize with the temptation to break such an amorphous examination into a digestible checklist borrowed from a statute, that task ultimately betrays the fluidity of the probable cause analysis. All lawfully discovered facts available to an officer prior to a search should inform a court's probable cause analysis, excluding those rare occasions where the General Assembly instructs otherwise.[4]

Applying this totality of the circumstances analysis, we hold that the circuit court did not err in finding that probable cause justified the search of Durham's car. Officer Labat's testimony reveals that, leading up to the search, he made three key observations: (1) the odor of alcohol coming from inside Durham's vehicle; (2) an open cup of amber, alcohol-smelling liquid in a front seat cupholder (albeit in the one a little further from the driver); (3) and an open bottle of liquor in the left rear footwell.[5] Liquor in an open cup, as opposed to a sealed bottle, located in a

---

[4] *See, e.g.,* Code § 4.1-1302(A) ("No law-enforcement officer, as defined in § 9.1-101, may lawfully stop, search, or seize any person, place, or thing and no search warrant may be issued solely on the basis of the odor of marijuana. . .").

[5] Officer Labat testified that the cup of blue liquid in the cupholder closer to Durham was in "plain view." The Court of Appeals panel, however, disagreed on how to interpret this portion of the record, namely whether the cup was in plain view from Officer Labat's perspective from inside the car, after the search had already begun, or whether it was in plain view from his pre-search perspective. *See Durham*, 2023 Va. App. LEXIS 477, at *21-22 (Lorish, J., dissenting).

12

front cupholder would lead a reasonable officer to believe that the liquor was there for immediate consumption. Put another way, the lidless cup in the front seat was more than just "an open container [] located within the passenger area of the motor vehicle," as it might be classified under Code § 18.2-323.1(B)'s prongs, and could lead an officer to a more inculpatory inference. This objectively reasonable belief that Durham had been sipping from the cup, coupled with the odor of alcohol and the bottle of liquor in the left rear footwell, gave the officer probable cause to search the vehicle for further evidence of drinking while driving or even driving under the influence of alcohol.

Once inside the passenger compartment, Officer Labat could search every part of the vehicle that might conceal the objects of his search. *See Ross*, 456 U.S. at 825. This allowed him access to the center console, as he reasonably thought that it could contain small, single-serving bottles of alcohol that he referred to as "miniatures." It was when Officer Labat pushed the button unlatching the console that he encountered the revolver.

Overall, these facts when taken in the light most favorable to the Commonwealth create a picture consonant with the requirements of probable cause and without offense to the Fourth Amendment. The Court of Appeals' determination on the motion to suppress was correct.

## II. SUFFICIENCY OF THE EVIDENCE

Having established that the fruits of Officer Labat's vehicle search need not have been suppressed, we examine Durham's second assignment of error, challenging the sufficiency of the evidence to support his convictions. Durham only contests his convictions for possession of a firearm by a nonviolent felon under Code § 18.2-308.2 and unlawfully carrying a concealed

If the former, the cup of blue liquid could not be used to retroactively justify probable cause. *Id.* at *22 n.9. For present purposes, we take the more restrained path, and without deciding the issue, do not include the cup of blue liquid in our probable cause analysis.

13

firearm under Code § 18.2-308, arguing that the evidence was inadequate to show that he constructively possessed the revolver found in the center console.

Where the sufficiency of the evidence is challenged, this Court affords the highest degree of appellate deference to the facts as decided by the initial factfinder. *Dietz v. Commonwealth*, 294 Va. 123, 132 (2017). This principle applies with "equal force" to bench trials and jury trials alike. *Id.* Here, we examine the evidence in the light most favorable to the Commonwealth, the prevailing party at trial, and grant it the benefit of all reasonable inferences gleaned therefrom. *Zimmerman v. Commonwealth*, 266 Va. 384, 386 (2003). A conviction will not be disturbed on appeal unless the judgment is plainly wrong or without evidence to support it. *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017); *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008).

Further, this Court will not replace the ultimate judgment of the factfinder with its own. "The Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt," but rather "whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (citations omitted).

"A conviction for the unlawful possession of a firearm can be supported exclusively by evidence of constructive possession." *Rawls v. Commonwealth*, 272 Va. 334, 349 (2006). Constructive possession is largely a factual determination entitled to deference by this Court. *Smallwood v. Commonwealth*, 278 Va. 625, 631 (2009). To establish constructive possession, the Commonwealth may prove through the defendant's acts, statements, conduct, or any other relevant facts and circumstances that the defendant was aware of the presence and character of the firearm, and that the firearm was subject to his dominion and control. *Rawls*, 272 Va. at 349. Possession "need not always be exclusive." *Smallwood*, 278 Va. at 630. Though proximity to a

14

firearm alone is generally not enough to prove constructive possession, it can be a probative fact available for the factfinder's consideration. *Rawls*, 272 Va. at 350.

The Commonwealth relied on more than just Durham's proximity to the revolver and his ownership of the vehicle to establish constructive possession. Officer Labat testified that as he approached Durham's car, he noticed Durham twisting towards the center console, hands out of view, while all other occupants sat still and faced forward. While Durham was turning, he simultaneously kept his eye on the officer through the side-view mirror as the officer approached. These actions could lead a rational trier of fact to believe that Durham concealed the revolver in his center console before it could be seen by law enforcement. Durham's conduct, combined with his proximity to the revolver, its ambient warmth, and Durham's ownership of the vehicle, provides a factual foundation sturdy enough to support a finding that he constructively possessed a firearm.[6]

CONCLUSION

For the foregoing reasons, we find no error in the circuit court or the Court of Appeals' application of the law. First, considering the totality of the circumstances leading up to the search, a reasonable law enforcement officer would have had probable cause to search the passenger compartment of Durham's car for evidence of drinking alcohol while driving. Second, Durham failed to meet his burden of showing that the circuit court's factual findings were plainly

---

[6] In the alternative, Durham argues that the testimony of his witness, Abigail Bent, established a reasonable hypothesis of innocence. This witness testified that she possessed the same type of revolver, which she said must have fallen out of her purse in Durham's car. A factfinder, however, is entitled to reject a hypothesis of innocence it finds incredible. *See Covil v. Commonwealth,* 268 Va. 692, 696 (2004). "A factfinder cannot arbitrarily choose, as between two equally plausible interpretations of a fact, one that incriminates the defendant. The choice becomes arbitrary, however, only when no rational factfinder could believe the incriminating interpretation of the evidence and disbelieve the exculpatory one." *Vasquez v. Commonwealth*, 291 Va. 232, 250 (2016).

wrong or without evidence to support them. We therefore affirm the judgment of the Court of

Appeals.

*Affirmed.*