PRESENT: All the Justices

FAIRLEY D. JONES

v.  Record No. 080374

COMMONWEALTH OF VIRGINIA

OPINION BY
JUSTICE LEROY F. MILLETTE, JR.
January 16, 2009

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal from a defendant's conviction for possession of a firearm by a convicted felon in violation of Code § 18.2-308.2, we consider whether a positive alert from a narcotics detection dog was sufficiently reliable to establish probable cause to conduct a search of a vehicle.  We also consider whether the evidence was sufficient to establish that an alleged firearm was designed, made, and intended to expel a projectile by means of an explosion.

BACKGROUND

On August 23, 2006, Officer Keith Tucker, a Hampton police officer, was patrolling an area of Hampton known for narcotics and weapons violations.  When Officer Tucker passed a car traveling from the opposite direction, the car "immediately started to pull over to the side of the road."  Officer Tucker "ran" the vehicle's license plate number through the Division of Motor Vehicles and found that the license plate number was not registered to the vehicle.  Officer Tucker notified members of a special investigations unit who were conducting "street

level narcotics interdiction" in the area that he was stopping a vehicle for improper registration.

After Officer Tucker initiated the stop, he asked the driver, Fairley D. Jones, for his driver's license. After several requests, Jones gave Officer Tucker his North Carolina driver's license. Officer Tucker then told Jones to sit on the ground because Jones' failure to cooperate and nervous behavior indicated to Tucker that "some type of criminal activity was taking place."

While Officer Tucker was walking back to his patrol car to initiate a driver's license check, he summoned a canine officer to the scene. The canine officer, Officer Soriano, arrived within three to five minutes of the request.[1] Officers Wisniewski, Warren, and Hawkins of the "street team" were also present at the scene.

Upon arriving, Officer Soriano walked his narcotics detection dog around the vehicle. The dog gave a "positive alert" on the driver's side door. Officer Soriano described the dog's alert as: "He does an aggressive alert. I've tried to tone him back a bit, because sometimes he tears up the cars. So, as soon as he gave me the alert with the paw, he kind of

---

[1] There is no issue concerning the lawfulness of the initial seizure or whether the duration of the stop was entirely justified by the traffic offense and the ordinary inquiries incident to such a stop.

2

jumped up on the door a little bit, [and] I pulled him down."
Based upon the dog's alert, officers searched the passenger
compartment of the vehicle and found a small amount of green
leafy material that the officers believed to be marijuana
embedded in the driver's side floorboard.

Officer Wisniewski then searched the trunk of the vehicle
and found a loaded firearm. After retrieving the firearm,
Officer Wisniewski "[m]ade the weapon safe, unloaded it, [and]
collected it." After Officer Wisniewski gave Jones his Miranda
warnings and confirmed that Jones was a convicted felon, he
asked Jones "where he had got the gun from." Jones responded,
"on the street."

Prior to trial, Jones filed a motion to suppress the
firearm and statements that he made to the police after the
search. Jones argued that the narcotics detection dog alert
was not proven sufficiently reliable to establish probable
cause to search his car. Jones conceded that the dog was
trained in narcotics detection, but asserted that the Hampton
police department had no "fail safe" mechanism to test the
dog's success rate for alerting to narcotics versus non-
narcotics. Without such a system in place, Jones argued that
the Commonwealth should have introduced data to establish the
dog's reliability in detecting narcotics.

The trial court denied Jones' motion to suppress both the firearm and statements that he made concerning the firearm. At the conclusion of the Commonwealth's evidence and at the conclusion of the trial, Jones renewed his suppression motion and moved to strike the Commonwealth's evidence, arguing that the Commonwealth failed to prove the alleged firearm was capable of expelling a projectile by means of an explosion. The trial court convicted Jones and sentenced him to five years imprisonment with three years suspended.

Jones appealed his conviction to the Court of Appeals, which denied Jones' petition by order. The Court of Appeals concluded that based upon the evidence of the narcotics detection dog's reliability, the trial court properly found that the dog's alert established probable cause to search the car. In addition, the Court of Appeals found that the evidence concerning the gun, while circumstantial, was sufficient for the trial court to conclude that the gun was "an instrument which was designed, made, and intended to expel a projectile by means of an explosion." Jones v. Commonwealth, Record No. 1190-07-1 (February 4, 2008). We granted Jones this appeal.

ANALYSIS

I.    Motion to Suppress

Jones contends that the trial court erred by not suppressing the alleged firearm and statements as having been

4

obtained in violation of his rights under the Fourth Amendment. Jones asserts that an alert by a narcotics detection dog, which was the method for establishing probable cause to search the vehicle, was insufficient to meet a presumption of reliability because of the lack of evidence concerning the dog's testing, training, and oversight.[2]

Jones concedes that at the suppression hearing, Officer Soriano testified that his narcotics detection dog had received training for narcotics detection. Nevertheless, Jones argues that the Hampton Police Department had no system that tested the reliability of the dog's alerts by collecting data on the dog's success rate for detecting narcotics versus non-narcotics.

Jones contends that the Commonwealth should have performed "backwards checks" on substances examined by a laboratory to determine whether the dog had falsely alerted on substances that were not illegal. In the absence of such a mechanism to determine the narcotics detection dog's reliability, Jones

---

[2] There is no issue as to the scientific basis underlying canine olfactory ability. See Spencer v. Commonwealth, 240 Va. 78, 97, 393 S.E.2d 609, 621 (1990) (explaining that "[w]hen scientific evidence is offered, the court must make a threshold finding of fact with respect to the reliability of the scientific method offered, unless it is of a kind so familiar and accepted as to require no foundation to establish the fundamental reliability of the system").

asserts that the dog had not been proven to be sufficiently reliable.

On appeal, Jones expands the scope of his argument made at the suppression hearing to include the lack of evidence of certification and field activity reports. Jones argues that the Commonwealth's evidence concerning the narcotics detection dog's specific training and certification, and the dog's track record for reliability, is insufficient to establish the probable cause necessary to justify the search of the vehicle, and therefore, the evidence obtained from the vehicle should be suppressed.

In response, the Commonwealth asserts that a positive alert from an experienced and trained narcotics detection dog is sufficient to establish probable cause. According to the Commonwealth, the evidence in this case concerning the narcotics detection dog's training and experience establishes the dog's reliability. The Commonwealth argues that it would be inappropriate to require "mini-trials" on the dog's training and performance before an officer could rely on his trained dog's alerts. The Commonwealth further asserts that it does not have the burden of producing field work records or other detailed training records in order to establish a narcotics detection dog's reliability.

In regard to reviewing a trial court's decision to deny a motion to suppress, we recently stated:

> A defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review de novo on appeal. Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002); see Bolden v. Commonwealth, 263 Va. 465, 470, 561 S.E.2d 701, 704 (2002); McCain v. Commonwealth, 261 Va. 483, 489, 545 S.E.2d 541, 545 (2001); see also Ornelas v. United States, 517 U.S. 690, 691, 699 (1996). In making such a determination, we give deference to the factual findings of the circuit court, but we independently determine whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment. Bolden, 263 Va. at 470, 561 S.E.2d at 704; McCain, 261 Va. at 490, 545 S.E.2d at 545; Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 924 (2000). The defendant has the burden to show that, considering the evidence in the light most favorable to the Commonwealth, the trial court's denial of his suppression motion was reversible error. Bolden, 263 Va. at 470, 561 S.E.2d at 704; McCain, 261 Va. at 490, 545 S.E.2d at 545; Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980).

McCain v. Commonwealth, 275 Va. 546, 551-52, 659 S.E.2d 512, 515 (2008).

"[P]robable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " United States v. Grubbs, 547 U.S. 90, 95 (2006) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). The Supreme Court has held that "the use of a well-trained narcotics-detection dog – one that 'does not expose noncontraband items that otherwise would remain hidden from

7

public view,'– during a lawful traffic stop, generally does not implicate legitimate privacy interests." Illinois v. Caballes, 543 U.S. 405, 409 (2005) (quoting United States v. Place, 462 U.S. 696, 707 (1983)) (internal citation omitted).

When the validity of a search depends on information supplied by others to the officers on the scene, the officers' training and experience is relevant, and the totality of circumstances bearing upon the credibility and weight of information supplied to the officers must be assessed. See, e.g., Cost v. Commonwealth, 275 Va. 246, 251, 657 S.E.2d 505, 507 (2008) (totality of the circumstances, in determining whether an officer has sufficient probable cause, includes "a consideration of the officer's knowledge, training and experience"); Harris v. Commonwealth, 241 Va. 146, 149, 400 S.E.2d 191, 193 (1991) (in determining whether the officer has reasonable articulable suspicion, " 'due weight must be given . . . to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience' " (quoting Terry v. Ohio, 392 U.S. 1, 27 (1968))); Hollis v. Commonwealth, 216 Va. 874, 877, 223 S.E.2d 887, 889 (1976) (in determining whether probable cause exists, we focus on "what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control").

While "no mathematical formula . . . can be applied in deciding whether a search . . . is supported by probable cause," Tamburino v. Commonwealth, 218 Va. 821, 824, 241 S.E.2d 762, 764 (1978), the standard of reasonableness, "tested and interpreted in a common sense and realistic fashion[,]" id., suggests that the factors include an awareness by the officers of the underlying circumstances in which the information arose, to assess the reliability of the information source. See Manley v. Commonwealth, 211 Va. 146, 149-51, 176 S.E.2d 309, 312-13 (1970). Indeed, as we have previously explained in an analogous situation involving whether an informant's tip was sufficiently reliable to establish probable cause:

> [T]he [United States] Supreme Court has defined and we have consistently applied a "two-prong test" for determining probable cause to search and seize; to establish probable cause based upon an informant's tip, the prosecution must show "underlying circumstances" sufficient to support the informant's conclusions and the conclusion of the police that the informant "was 'credible' or his information 'reliable'."

Wright v. Commonwealth, 222 Va. 188, 191, 278 S.E.2d 849, 851 (1981) (citation omitted).

Thus, in formulating a standard to establish the reliability of narcotics detection dogs, we are guided by the principles applicable to establishing the reliability of informants. When the factual basis for probable cause or

9

reasonable suspicion is provided by an informant, that person's reliability and basis of knowledge are two of the "highly relevant" factors in the overall totality of the circumstances analysis. Gates, 462 U.S. at 230, 233. The opportunity to observe and the certainty expressed by the supplier of information in reporting facts to the police bear on the showing of reliability needed to support probable cause. McCary v. Commonwealth, 228 Va. 219, 227-28, 321 S.E.2d 637, 641 (1984). Also, the information supplier's history of reliability is relevant. See, e.g., Wright, 222 Va. at 190-91, 278 S.E.2d at 851-52 (observing that "[w]hen . . . an informant has a record of furnishing reliable reports, an officer is justified in crediting a new report without engaging in a statistical balancing act"); Manley, 211 Va. at 150, 176 S.E.2d at 313 (explaining that "[t]he most commonly accepted and approved allegation to substantiate reliability is that the informer is a person of known and proven reliability and has furnished information to law enforcement officers which has been instrumental in procuring convictions").

In the case of dog alert information, the qualification of the handler to recognize responses by the dog, as well as the dog's training and experience are relevant. See Hetmeyer v. Commonwealth, 19 Va. App. 103, 109, 448 S.E.2d 894, 898 (1994). For trial testimony, the foundation relating to dog alert

testimony " must establish the appropriate training and reliability of the dog in the detection of specific drugs by odor and the witness handler's expertise in interpreting the dog's behavior, together with circumstances conducive to a dependable scent identification by the animal and a credible evaluation of its related behavior." Id. at 109-10, 448 S.E.2d at 898. In the field, the officers' awareness of such factors bears directly on the existence of probable cause to search.

We find guidance in Epperly v. Commonwealth, 224 Va. 214, 233, 294 S.E.2d 882, 893 (1982), in which this Court enunciated the standard regarding the admission of dog-tracking evidence. We held:

> [D]og-tracking evidence is admissible in a criminal case after a proper foundation has been laid to show that the handler was qualified to work with the dog and to interpret its responses, that the dog was a sufficiently trained and proven tracker of human scent . . .

(Emphasis added).

Although a question of first impression in Virginia, courts in other jurisdictions have considered the admissibility of evidence obtained as a result of an alert by a narcotics detection dog. In a number of jurisdictions, while certification may be a factor considered, the focus of the inquiry is upon the training and reliability of the narcotics detection dog. See United States v. Berry, 90 F.3d 148, 153

(6th Cir. 1996); United States v. Lingenfelter, 997 F.2d 632, 639 (9th Cir. 1993); United States v. Meyer, 536 F.2d 963, 965-66 (1st Cir. 1976); State v. England, 19 S.W.3d 762, 768 (Tenn. 2000); State v. Barker, 850 P.2d 885, 893-94 (Kan. 1993); see also South Dakota v. Nguyen, 726 N.W.2d 871, 875-77 (S.D. 2007) (discussing various jurisdictions' approaches to establishing the reliability of narcotics detection dogs).

We hold that a positive alert from a narcotics detection dog establishes probable cause to conduct a search of a vehicle and that evidence seized during the search is admissible after a proper foundation has been laid to show that the dog was sufficiently trained to be reliable in detecting narcotics. The narcotics detection dog's reliability can be established from its training and experience, as well as a proven track record of previous alerts to the existence of illegal narcotics. Specific certifications and the results of field testing are not required to establish a sufficient foundation. However, if the dog's qualifications are challenged, the trial court may consider any relevant evidence in determining whether the Commonwealth has established the dog's reliability in detecting narcotics.

Applying these principles, we conclude that the trial court did not abuse its discretion in holding the narcotics detection dog's training and experience sufficient to establish

the dog's reliability for purposes of supporting a finding of probable cause.  Officer Soriano testified at length regarding his narcotics detection dog's qualifications.  Officer Soriano stated that his dog was specially trained before he took custody of the dog, and that he and the dog train for eight hours every two weeks for both narcotics and utility work.  During this training, Officer Soriano uses the scents of marijuana, cocaine, methamphetamines, and heroin.  Furthermore, his dog has been with the police department for four and a half years, and has received training at the Virginia Police Work Dog Association.  Officer Soriano has also made over 50 marijuana arrests with his dog alone.  Additionally, Officer Soriano testified that his dog would not give a positive alert to substances of similar appearance and strong odor, such as oregano, which humans might erroneously perceive to be marijuana.

Officer Soriano did concede on cross-examination that the Hampton police department does not perform "backwards checks" to quantify the number of times that the dog correctly alerts in the field.  However, the trial court properly held that the police department's failure to conduct back checks did not negate the dog's reliability.[3]  Considering the evidence of the

---

[3] Also, it should be noted that "backwards checks" are not necessarily a helpful way of determining whether a narcotics

13

narcotics detection dog's training, experience, and reliability in the light most favorable to the Commonwealth, the trial court's denial of Jones' motion to suppress was not an abuse of discretion.

## II.   Sufficiency of the Evidence

Jones does not challenge his status as a convicted felon under Code § 18.2-308.2.  Rather, he contends that the Commonwealth failed to prove that the item found in his truck was a "firearm," which is defined as any instrument designed, made, and intended to expel a projectile by means of an explosion, even though the Commonwealth does not need to prove the instrument was "operable," "capable" of being fired, or had the "actual capacity to do serious harm."

Jones argues that the evidence is insufficient as a matter of law, and that the Commonwealth only established that the firearm appeared, by all outward appearances, to be a firearm. Jones argues that the firearm was admitted into evidence over his objection.  Jones asserts there was no testimony offered as

---

detection dog is reliable because the dogs alert to the *odor* of narcotics, not the presence of narcotics.  See, e.g., Robert C. Bird, An Examination of the Training and Reliability of the Narcotics Detection Dog, 85 Ky. L.J. 405, 409 (1997) (dogs "have the ability to detect the smallest traces of odors").  Of course, the scent of drugs may remain in an area after the contraband itself is removed.  In this case, Officer Soriano testified that the dog gave a positive alert on the seam of the driver's door, without an opportunity to alert specifically on the suspected marijuana located inside the car.

to the nature or character of the firearm, and there was no testimony concerning the make, model, or type of the firearm admitted into evidence. Jones argues that the Commonwealth did not present an expert witness or a certificate of analysis from a laboratory that the weapon was examined or fired by a weapons technician. Finally, Jones contends there was no forensic examination offered concerning whether the instrument was designed, made, and intended to expel a projectile by means of an explosion.

The Commonwealth responds that the judgment is not plainly wrong or without evidence to support it, and that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The evidence presented included the observations of the officer who seized the firearm, Jones' acknowledgement when questioned about the seized "gun" that he purchased it "on the street," and the trial court's examination of the gun, ammunition magazine, and bullets at trial.

When a defendant challenges the sufficiency of the evidence, the Court reviews the evidence in the light most favorable to the Commonwealth, drawing all reasonable inferences in its favor as the prevailing party below. Perez v. Commonwealth, 274 Va. 724, 728, 652 S.E.2d 95, 97 (2007). The judgment of the trial court will only be reversed if it is

plainly wrong or without evidentiary support.  Id.  "The issue upon appellate review is 'whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' "  Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)) (emphasis in original).

Code § 18.2-308.2 proscribes the possession of a firearm by a convicted felon.  In Armstrong v. Commonwealth, 263 Va. 573, 584, 562 S.E.2d 139, 145 (2002), this Court held that "in order to sustain a conviction for possessing a firearm in violation of Code § 18.2-308.2, the evidence need show only that a person subject to the provisions of that statute possessed an instrument which was designed, made, and intended to expel a projectile by means of an explosion.  It is not necessary that the Commonwealth prove the instrument was 'operable,' 'capable' of being fired, or had the 'actual capacity to do serious harm.' "  Id.

The firearm, ammunition magazine, and bullets that Officer Wisniewski recovered from Jones' vehicle were introduced as evidence at Jones' trial.  Jones' statement that he bought the gun "on the street" was also introduced.  Officer Wisniewski testified that the item recovered from Jones' trunk was a "firearm," and he described how he unloaded the firearm and

16

"made it safe."  The trial judge, while holding the firearm, stated:  "This is a real gun. . .[A]lso part of the evidence are real bullets along with [an ammunition] clip.  This is a gun."

The trial court's judgment was not plainly wrong, as the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to prove beyond a reasonable doubt that the item recovered from Jones' vehicle was designed, made, and intended to expel a projectile by means of an explosion.

Accordingly, the judgment of the Court of Appeals is affirmed.

<u>Affirmed.</u>