COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judges Frank and Alston
Argued by teleconference

CHARNCEY LAQUINN DANIELS

MEMORANDUM OPINION[*] BY
v.      Record No. 2492-11-4      JUDGE ROSSIE D. ALSTON, JR.
                                                    MARCH 12, 2013

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jan L. Brodie, Judge

(Charles J. Swedish; Sloan and Swedish, on brief), for appellant.
Appellant submitting on brief.

David M. Uberman, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Charncey Laquinn Daniels (appellant) appeals his conviction for failing to stop after an

accident in violation of Code § 46.2-894, arguing that the evidence was insufficient to support

his conviction. Finding no error, we affirm.

BACKGROUND[1]

"When a defendant challenges the sufficiency of the evidence on appeal, the evidence is

viewed in the light most favorable to the Commonwealth." Murillo-Rodriguez v.

Commonwealth, 279 Va. 64, 68, 688 S.E.2d 199, 201 (2010) (citing Jones v. Commonwealth,

277 Va. 171, 182, 670 S.E.2d 727, 734 (2009)).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] As the parties are fully conversant with the record in this case and because this
memorandum opinion carries no precedential value, this opinion recites only those facts and
incidents of the proceedings as are necessary to the parties' understanding of the disposition of this
appeal.

So viewed, the facts indicate that in the early morning hours of December 27, 2010, Virginia State Police Trooper Kenneth Brown found a man, later identified as Jabrill Y. Mara, stumbling along the right shoulder of Interstate 66 near the Nutley Street exit. Mara was unable to speak. He had a bloody and "badly swollen" face, and his clothes were covered in blood. Brown contacted emergency medical responders, who took Mara to the hospital. The emergency room physicians discovered that Mara had been shot four times in the left side of the face and head.

Mara died from his injuries three days later. An autopsy later revealed that Mara died from four gunshot wounds to the left side of his face and head. The report further indicated that Mara suffered abrasions to his nose, abdomen, knees, and left leg, as well as a contusion on the right side of his chest.

Crime scene technicians examined the location where Brown had found Mara. They discovered blood patterns on the pavement consistent with a body being dragged across it. The distance between the first bloodstain and the next was several yards, with the distance between each subsequent stain decreasing, "like if you were skipping rocks across a pond."

After speaking with Mara's sister, Brown focused his investigation on appellant. On December 28, 2010, Washington, D.C. Metropolitan Police arrested appellant, who was driving a black rental car. Police discovered bloodstains inside the car consistent with someone being shot at close range while seated in the passenger seat.

Appellant was tried for failure to stop after an accident in violation of Code § 46.2-894, among other crimes.[2] Appellant did not testify at trial. However, during the trial, the Commonwealth introduced into evidence a videotape of an interview the police conducted of

_____

[2] In addition to failure to stop after an accident, appellant was also tried and convicted of second-degree murder. The murder conviction is not before us in the instant appeal.

- 2 -

appellant after he was apprehended in Washington, D.C. The Commonwealth played the videotaped interview for the jury during the trial. In the videotaped interview, appellant admitted that he was with Mara on the night of December 26, 2010. Appellant claimed Mara had contacted him and asked him to drive Mara to buy drugs at a shopping center. Appellant said Mara was injured while buying the drugs and returned to the car bleeding and yelling, "Drive, drive, drive!" Appellant claimed that as he drove, Mara tried to open the passenger car door and ultimately fell out of the car near an interstate exit. Appellant said he "panicked" and left Mara there because he did not want to take Mara to a hospital or call 911 because he had "just got[ten] off parole."

Appellant moved to strike following the Commonwealth's case-in-chief. Appellant argued that the Commonwealth had failed to prove that appellant was involved in an accident. The trial court denied appellant's motion to strike. Appellant renewed his motion to strike at the close of all the evidence, and the trial court denied the motion.

The jury returned a verdict of guilty, and the trial court sentenced appellant to five years' imprisonment for failure to stop after an accident. This appeal followed.

ANALYSIS

On appeal, appellant argues that the evidence was insufficient to support his conviction because the Commonwealth failed to prove that appellant's or Mara's actions were accidental and not intentional. In reviewing the sufficiency of the evidence to support a defendant's conviction, "the judgment of the trial court shall not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it." Code § 8.01-680.

Assuming appellant properly preserved the argument he presents on appeal,[3] we find it without merit. In Milazzo v. Commonwealth, 276 Va. 734, 738, 668 S.E.2d 158, 160 (2008), the Supreme Court of Virginia held, "The purpose of Code § 46.2-894 is to protect persons injured as the result of, and to ensure the assessment of liability arising out of, an unfortunate vehicular event. The statute's primary beneficiary is the injured victim, and *it makes no difference whether the collision was intentional or unintentional*." (Emphasis added). The instant case is squarely controlled by Milazzo. Under Milazzo, it is irrelevant whether appellant's or Mara's actions were intentional or unintentional. Id. Therefore, the evidence was sufficient to support appellant's conviction.

Affirmed.

---

[3] In his motion to strike at trial, appellant argued that "in order for a driver of a vehicle to be involved in an accident within the intent . . . of the statute, there must be physical contact between the driver's vehicle and another vehicle, person or object, or the . . . driver must have been a proximate cause of an accident." The trial court ruled that while there was no evidence that appellant was the proximate cause of an accident or that appellant's vehicle came into physical contact with another vehicle, there was "contact between [appellant's] vehicle and the person," which was sufficient to prove an accident. Appellant did not argue in his motion to strike that the Commonwealth failed to prove an accident because the evidence showed his actions were intentional.