COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Malveaux and Frucci

UNPUBLISHED

JOSEPH BLAKE WIDGEON

v.      Record No. 1350-24-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*]
PER CURIAM
FEBRUARY 17, 2026

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Randall D. Smith, Judge Designate

(Kurt A. Gilchrist, on brief), for appellant. Appellant submitting on brief.

(Jason S. Miyares,[1] Attorney General; Timothy J. Huffstutter, Assistant Attorney General, on brief), for appellee. Appellee submitting on brief.


On a conditional guilty plea, the Circuit Court of the City of Chesapeake convicted

Joseph Blake Widgeon of "Possession With Intent to Distribute Methamphetamine," in violation

of Code § 18.2-248, and "Possession With Intent to Distribute Methamphetamine 3rd or

Subsequent Offense," in violation of Code § 18.2-248(C).[2] The court sentenced Widgeon to 30

years of incarceration, with 20 years suspended. On appeal, Widgeon argues that the circuit

court erred by denying his motion to suppress evidence found during the search of his vehicle

during a traffic stop. Both parties waived oral argument before this Court.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[2] In exchange for his guilty pleas, the Commonwealth moved for entry of a *nolle prosequi* on eight other charges, which the circuit court granted. In addition, in the plea agreement, "[t]he defendant further waive[d] his right to appeal this case, other than on the grounds of the suppression motion."

Officer Aaron Weeks of the Chesapeake Police Department testified at the suppression hearing. He recalled that on November 5, 2021, he saw a SUV with license plates that he had previously seen on another vehicle. He testified, "The tags that were displayed on the vehicle were not returning in DMV." Officer Weeks stopped the SUV in a parking lot. The driver and sole occupant, Widgeon, exited the SUV and approached Officer Weeks's police vehicle. Officer Weeks had encountered Widgeon "approximately four to five times" previously and knew he was not a licensed driver.[4] Widgeon began "pacing back and forth" in front of Weeks's police vehicle. Officer Weeks called for backup and instructed Widgeon to stay where he could see him.

Given the invalid license plates, Officer Weeks decided to run a search for the SUV's 17-digit vehicle identification number (VIN). He initially copied the VIN incorrectly while trying to read it from the outside of the SUV. When it would not "return," Weeks went back to the SUV a second time, copied the VIN down correctly, and determined that the vehicle was "inactive."

Officer Weeks approached Widgeon, who was still demonstrating "nervous behavior" but had returned to the SUV's driver's seat. While looking through the window, Officer Weeks noticed "an open beer bottle in the center console." Officer Weeks recalled that the bottle was "partially empty," as if some of it had been consumed. Officer Weeks also recalled that "around the rim was wet." Weeks knew it was a beer bottle because of its shape and the "odor of alcoholic beverage"

---

[3] "In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *McGowan v. Commonwealth*, 72 Va. App. 513, 516 (2020) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).

[4] Widgeon does not challenge the constitutionality of the stop on appeal. In the circuit court, Widgeon moved to suppress statements made during the stop as obtained in violation of his "*Miranda* rights," but he does not challenge the circuit court's ruling on the constitutionality of the stop on appeal.

emanating from Widgeon's person. Widgeon told Officer Weeks, "I ain't been drinking; that's the only beer I've had," and he indicated that there were more in a cooler in the back.

Officer Weeks searched the SUV and found two beer bottle caps in the driver's side door pocket. He then opened the center console and immediately saw "what appeared to be a marijuana smoking device and several digital scales with what appeared to be a white powdery residue on them." The residue was "heavily caked" on the scale. Based on his training and experience, and his previous interactions with Widgeon, Weeks believed the substance was methamphetamine. Weeks testified, "In my training and experience, digital scales are often used to weigh out illegal narcotics."

Officer Weeks continued searching the center console and found a "zippered pouch." He opened the pouch because, although an alcohol container could not fit inside, he was now also looking "for more illegal narcotics based on the scale with the suspected residue." Inside were Ziploc bags, "jewelers' bags with an apple sign on them," and about 1.4 ounces of methamphetamine. On cross examination, Officer Weeks recalled that he could not see inside the center console without opening it and that he had not discerned the odor of marijuana or any other controlled substance coming from the console. Officer Weeks arrested Widgeon, searched his person, and found a capped syringe that appeared to have methamphetamine residue inside.

Widgeon argued to the circuit court that the evidence found during the search of the SUV should be suppressed because an "open container" did not give Officer Weeks "probable cause to search for more open containers" or that Widgeon was "involved in further criminal activity, certainly not possessing illegal narcotics." He contended that Officer Weeks could not see inside the center console but had to open it, and only then saw the scale and controlled substances. He also maintained that the zippered pouch was closed, it could not hold a beer bottle, and Weeks only knew that it contained contraband after opening it. Widgeon asserted that Officer Weeks should not have been able to open the pouch without a warrant.

After argument, the trial court denied the motion to suppress. The trial court found that the traffic stop was permissible based on the invalid license plates, and after investigating the VIN, Officer Weeks saw a glass container that appeared to be a beer bottle and was "wet around the rim." Widgeon then told Officer Weeks that it was "the only beer [he] had, suggesting that he had consumed the beer." The court found that Officer Weeks had probable cause to look inside the center console, where more beer could be stored, and that once he opened it, he immediately saw the marijuana smoking device and "scale with a white powdery substance" that was "thick." Because Officer Weeks believed, based on his training and experience, that the substance was methamphetamine, he could also open the zippered pouch to look for more contraband.

ANALYSIS

On appeal, Widgeon argues that the "trial court erred in denying the defendant's motion to suppress because the open container did not give the police the authority to search the vehicle." He further argues, "The Commonwealth needed to demonstrate the bottle was in fact beer, and the defendant consumed the alcohol prior to searching the car." He further argues that the existence of the open beer container did not mean there was a "fair probability the center consol contained more beer bottles."

In reviewing the denial of a motion to suppress, the Supreme Court has previously stated:

> The burden is on the defendant to show that the trial court committed reversible error. We are bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence. We will review the trial court's application of the law de novo.

*McGhee v. Commonwealth*, 280 Va. 620, 623 (2010) (quoting *Whitehead v. Commonwealth*, 278 Va. 300, 306-07 (2008)).

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

"[W]arrantless searches are *per se* unreasonable, subject to a few specifically established and well-delineated exceptions." *Parady v. Commonwealth*, 78 Va. App. 18, 28-29 (2023) (alteration in original) (quoting *Megel v. Commonwealth*, 262 Va. 531, 534 (2001)).

The Supreme Court has stated, "Under long-standing Fourth Amendment jurisprudence, a police officer may, before making an arrest and without obtaining a search warrant, search a vehicle involved in a traffic stop so long as the officer has probable cause to do so." *Curley v. Commonwealth*, 295 Va. 616, 621 (2018). "Probable cause thus exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* at 622 (quoting *Jones v. Commonwealth*, 277 Va. 171, 178 (2009)). "To determine whether a police officer had probable cause to conduct a warrantless search of a vehicle, as occurred here, 'we examine the events leading up to the [search], and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.'" *Id.* (alteration in original) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 56-57 (2018)).

Furthermore, it is well-established that "police observation of objects in plain view does not implicate the Fourth Amendment so long as the police are legitimately in the place where they viewed the objects." *Gibson v. Commonwealth*, 50 Va. App. 744, 749 (2007). "The theory of the plain view doctrine is that an individual has no reasonable expectation of privacy in items that are in plain view." *Daniels v. Commonwealth*, 69 Va. App. 422, 435 (2018) (quoting *Commonwealth v. Thornton*, 24 Va. App. 478, 483 (1997)). "The [plain view] doctrine only applies to seizures because, by definition, if a police officer has a legal right to be in a place where he observes an item in plain view, no 'search' takes place, and it is only the seizure of the item that implicates the Fourth Amendment." *Cauls v. Commonwealth*, 55 Va. App. 90, 98 (2009). "To invoke the plain view doctrine, however, the police must have probable cause to

believe the evidence seized was evidence of a crime or contraband." *McLaughlin v. Commonwealth*, 48 Va. App. 243, 248 (2006).

The Supreme Court has held that an officer had probable cause to search an automobile without a warrant based on "three key observations: (1) the odor of alcohol coming from inside [the defendant's] vehicle; (2) an open cup of amber, alcohol-smelling liquid in a front seat cupholder (albeit in the one a little further from the driver); (3) and an open bottle of liquor in the left rear footwell." *Durham v. Commonwealth*, 303 Va. 310, 324-25 (2024). In *Durham*, the defendant, much like Widgeon here, argued that the evidence needed to establish that he "showed signs of drinking alcohol" before a search was permissible. *Id.* at 323. The Supreme Court rejected that argument, finding that it "improperly conflates the issues of probable cause for a search and the burden of proof relative to guilt and innocence." *Id.* The court ultimately held that based on the above observations, the officer had an "objectively reasonable belief that [the defendant] had been sipping from the cup" and "probable cause to search the vehicle for *further evidence* of drinking while driving or even driving under the influence of alcohol." *Id.* at 325 (emphasis added). The Supreme Court further concluded that "[o]nce inside the passenger compartment, [the officer] could search every part of the vehicle that might conceal the objects of his search." *Id.* (citing *United States v. Ross*, 456 U.S. 798, 825 (1982)). In *Durham*, this principle "allowed [the officer] access to the center console," where the officers found an illegal firearm. *Id.*

In the case now before us, Officer Weeks saw an open beer container in plain view inside the SUV, Widgeon stated that it was the only beer he had, and Weeks discerned the odor of alcohol emanating from Widgeon's person. Those circumstances provided Weeks probable cause to search the SUV for further evidence of drinking, including the center console, which could have held containers of alcohol or even additional beer bottle caps. *See id.* After opening

the center console and finding a digital scale with residue, Weeks also had probable cause to believe that there were narcotics in the vehicle and could then search all areas where narcotics could be located, like the zippered pouch.[5] *See Curley*, 295 Va. at 619-20 (finding that discovery of a digital scale with white powder residue on the defendant's person contributed to finding probable cause to search a vehicle for narcotics). Therefore, Weeks has not demonstrated that the trial court erred by denying his motion to suppress.

CONCLUSION

For all of the foregoing reasons, we do not disturb the judgment of the circuit court.

*Affirmed.*

---

[5] Widgeon does not independently argue on appeal that Weeks could not "broaden" the search after finding the digital scale with suspected narcotics in the center console.