# COURT OF APPEALS OF VIRGINIA

### Record No. 1082-25-3

JAMES DOUGLAS CASON, A/K/A
JAMES DOUGLAS CESA, A/K/A
JIMMY WAYNE CASON, A/K/A
RALPH W. CASON
v.
COMMONWEALTH OF VIRGINIA

Present: Judges Malveaux, Athey and Frucci
Argued at Lexington, Virginia

Opinion Issued April 28, 2026[*]

### FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
Sean C. Workowski, Judge

Caleb Routhier for appellant.

J. Brady Hess, Assistant Attorney General (Jason S. Miyares,[1] Attorney General, on brief), for appellee.

### MEMORANDUM OPINION BY
### JUDGE STEVEN C. FRUCCI

Following a bench trial, James Douglas Cason, a/k/a, James Douglas Cesa, a/k/a, Jimmy

Wayne Cason, a/k/a, Ralph W. Cason ("Cason") was convicted of possessing with an intent to

distribute a schedule I or II controlled substance, third or subsequent offense.  Cason was sentenced

to 20 years of incarceration, with 7 years suspended.  On appeal, Cason challenges the circuit

court's denial of his motion to suppress.  Cason also asserts that the circuit court erred by not

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

permitting a mitigation letter to be used at sentencing. For the following reasons, this Court affirms the circuit court's judgment.

## BACKGROUND[2]

While patrolling the Fishersville area of Augusta County, Deputy Stutes saw a vehicle driven by Cason fail to completely stop at a stop sign. As a result, Deputy Stutes initiated a traffic stop and approached Cason. Cason appeared nervous, had a "hard time concentrating," and his pupils "seem[ed] to be pretty dilated." Cason informed Deputy Stutes that his driver's license was restricted and repeatedly requested Deputy Stutes reach out to a Drug Enforcement Agency agent working in Harrisonburg. Deputy Stutes obtained Cason's license and information and asked him for his registration and insurance information. Cason looked for his insurance information on his phone. Ultimately, Cason never provided proof of insurance.

Deputy Stutes returned to his vehicle to run Cason's information through the National Crime Information Center (NCIC), confirmed that his driver's license was revoked, and saw that it had been revoked because of a "DUI related charge." At this moment, Deputy Stutes did not run a "query transcript" of Cason's driver's license history.

"Within several minutes of the traffic stop," and while Deputy Stutes had been running Cason's information, Corporal Kirby responded to the traffic stop. Deputy Stutes exited his vehicle "immediately" and gave Corporal Kirby Cason's information and requested he run a query transcript to confirm Cason's status and determine his driver's license history. Then, Deputy Stutes

---

[2] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we discard any evidence that conflicts with the Commonwealth's evidence, and regard as true all the credible evidence favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence. *Cady*, 300 Va. at 329.

asked Cason to step out of his vehicle, and Deputy Stutes used his K-9, Vudu,[3] "to conduct a free air sniff" of Cason's vehicle.[4] Vudu was "trained and certified" to alert to "the presence of narcotic odor."[5] Vudu and Deputy Stutes went through narcotic detection training together; Vudu was certified by Ventosa Kennels[6] in detecting narcotics and underwent "blind training."[7] Depending on the circumstances (such as height of the source), Vudu was trained that either "standing up" or laying down could be an alert to the presence of narcotics.

On the second "pass" around the vehicle, Deputy Stutes observed Vudu have "a noticeable change in behavior on the driver's side door" and "snap[] his head back towards the lower part of the door seam on the driver's side and stay[] in that area for a few seconds." Vudu had a noticeably "audible change" in his breathing, which was indicative of him "attempting to locate a source." With Cason's driver's side window being rolled down, Vudu "jumped up onto the lower part of the door window," placed his paws on the window, and looked inside it. At that point, Vudu stared into the vehicle, breathing slowly with his mouth open. According to Deputy Stutes's training with Vudu, this indicated a "presence of a narcotic odor." Based off that alert, Deputy Stutes searched the vehicle.

---

[3] The record refers to Deputy Stutes's K-9 as both Voodoo and Vudu; we will refer to him as Vudu throughout this opinion.

[4] According to Deputy Stutes, running a query transcript takes "about the same amount of time it would have taken [him] to run" his K-9.

[5] Vudu had been deployed nine times from December 14, 2023, to January 13, 2024. Of those deployments, four resulted in narcotic discoveries. Five times he altered to "the presence of narcotic odor" but physical narcotics were not found.

[6] Defense counsel asserted at a motion to suppress that the motion was based on "lack of probable cause that also included that the dog did not properly alert" and not an issue with the dog's certification.

[7] This training for Vudu involved running him through test scenarios in which he would search for narcotics in a location unknown to him but known to the officer and scenarios in which neither he nor the officer knew the location of the narcotics.

Later, Cason was charged, in part, with possession with the intent to distribute a schedule I or II controlled substance. Cason moved to suppress evidence obtained from the search of his vehicle, arguing that there was no legal justification for the traffic stop and that the traffic stop exceeded the time and scope of what was reasonable to complete the purpose of the stop. At a hearing on the motion, his counsel objected to further testimony about what evidence was found during the search. However, according to Cason's filed motion to suppress, allegedly Deputy "Stutes recovered a brown utility bag in the backseat of the vehicle. The utility bag contained clear plastic baggies. The baggies contained a crystal-like substance, which later tested positive for Methamphetamine." The circuit court denied his motion to suppress, finding that "Deputy Stutes had probable cause to believe [Cason] committed a traffic infraction," that Deputy "Stutes and [Corporal] Kirby did not unnecessarily extend the duration of the traffic stop by allowing Vudu to conduct a sniff of the car" and that Deputy Stutes had probable cause "to conduct a warrantless search of [Cason's] vehicle for narcotics."[8] After a later bench trial, Cason was found guilty of the charge.[9] Following his sentencing hearing, Cason was sentenced to 20 years of incarceration, with 7 years suspended. Cason appeals.

---

[8] The circuit court found that the free air sniff "created no delay."

[9] On appeal, Cason did not provide a timely transcript, or written statement of facts in lieu of a transcript, for either the bench trial or the sentencing hearing. On appeal, Cason claims that at the sentencing hearing he moved to introduce a letter written by his fiancée, who was present in the courtroom. Allegedly, the Commonwealth objected to the introduction of the letter unless she "c[ould] testify that she wrote it." The Commonwealth supposedly argued that the letter "need[ed] to be authenticated." The letter was not used as mitigation evidence, and according to the Commonwealth on appeal, Cason's counsel did not proffer the contents of the letter during the sentencing hearing.

ANALYSIS

I. Motion to Suppress[10]

"The law regarding appellate review of a trial court's decision on a motion to suppress is well settled. The appellant bears the burden of establishing that reversible error occurred." *Williams v. Commonwealth*, 71 Va. App. 462, 474 (2020). "[A]n appellate court must give deference to the factual findings of the circuit court and give due weight to the inferences drawn from those factual findings; however, the appellate court must determine independently whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." *Moore v. Commonwealth*, 69 Va. App. 30, 36 (2018) (alteration in original) (quoting *Commonwealth v. Robertson*, 275 Va. 559, 563 (2008)). "On appeal, a 'defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review de novo.'" *Cole v. Commonwealth*, 294 Va. 342, 354 (2017) (quoting *Cost v. Commonwealth*, 275 Va. 246, 250 (2008)).

"The Commonwealth carries the burden of showing that a warrantless search and seizure was constitutionally permissible." *Jackson v. Commonwealth*, 267 Va. 666, 673 (2004). "However, a defendant must show, when viewing the evidence in the light most favorable to the Commonwealth, that the denial of the motion to suppress evidence was reversible error." *Id.* Cason contends that the circuit court erred by denying his motion to suppress, claiming that the

---

[10] Because we hold the denial of the motion to suppress was not an error, we do not reach the question, necessary for a harmless error analysis, concerning whether the transcript from the trial, which was filed late, was indispensable to that issue. *See McDaniel v. Commonwealth*, 73 Va. App. 299, 317 (2021); *cf. McGinnis v. Commonwealth*, 296 Va. 489, 501 (2018) (assuming without deciding that an issue was properly before the Court because addressing it on the merits provided the best and narrowest ground for resolution).

police exceeded the scope of the stop and Vudu's behavior did not create probable cause to search.[11]

### A. The Scope of the Traffic Stop

> [A] police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures. A seizure justified only by a police-observed traffic violation, therefore, "become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission" of issuing a ticket for the violation.

*Rodriguez v. United States*, 575 U.S. 348, 350-51 (2015) (second and third alterations in original) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). Further, "[b]eyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to [the traffic] stop.' Typically, such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* at 355 (second alteration in original) (quoting *Caballes*, 543 U.S. at 408). "Authority for the seizure ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* at 349. Therefore, "[t]he critical question is not whether the [unrelated investigative inquiry] occurs before or after the officer issues a ticket, but whether [that unrelated investigative questioning] adds time to the stop." *Id.*

Here, while Cason was initially stopped for failure to come to a complete stop at a stop sign, when Deputy Stutes encountered him, he informed Deputy Stutes that his driver's license was restricted and did not have insurance information readily at hand.[12] With the information that

---

[11] Cason does not challenge on appeal the reason for the traffic stop, nor does he challenge the sufficiency of the evidence of his intent to distribute.

[12] On appeal, Cason claims that his inability to provide insurance should not have been used by the circuit court to justify the length of the stop because he was not the registered owner. However, while Cason did present evidence at the suppression hearing and questioned the

Cason may have been driving illegally, Deputy Stutes began investigating his driving history. Though he had started this investigation as Corporal Kirby arrived, he had not run a query transcript of Cason's driver's license history. Deputy Stutes exited his vehicle "immediately" and gave Corporal Kirby Cason's information and requested he run a query transcript to confirm Cason's status and determine his driver's license history; he then removed Cason and began the free air sniff.[13] Deputy Stutes testified that the free air sniff would take about as long as running the query transcript, and the circuit court found that no delay was caused by the free air sniff "as it seemed to have concluded by the time [Corporal] Kirby had spent approximately one minute conducting a QT." Though he said he would look on his phone for proof of insurance, Cason never proved proof of insurance. Given the circumstances of this case, it cannot be said that the circuit court erred in finding no delay or in not finding that the officers exceed the scope of the traffic stop.

B. Vudu

> [A] positive alert from a narcotics detection dog establishes probable cause to conduct a search of a vehicle and that evidence seized during the search is admissible after a proper foundation has been laid to show that the dog was sufficiently trained to be reliable in detecting narcotics. The narcotics detection dog's reliability can be established from its training and experience, as well as a proven track record of previous alerts to the existence of illegal narcotics. Specific certifications and the results of field testing are not required to establish a sufficient foundation. However, if the dog's qualifications are challenged, the trial court may consider any relevant evidence in determining whether the Commonwealth has established the dog's reliability in detecting narcotics.

---

officers about whether the vehicle was registered, no evidence that the vehicle was registered to someone other than Cason was presented at the suppression hearing. In fact, as the other transcripts were untimely filed, this allegation was not mentioned at any point of the record that this Court can consider. As such, like the circuit court at the time of the motion to suppress, this Court has no evidence that the vehicle at issue was registered to a business.

[13] Therefore, we note that there was no time spent requesting or waiting for the arrival of Vudu.

*Jones v. Commonwealth*, 277 Va. 171, 180-81 (2009). "In the case of dog alert information, the qualification of the handler to recognize responses by the dog, as well as the dog's training and experience are relevant." *Id.* at 179.

> For trial testimony, the foundation relating to dog alert testimony "must establish the appropriate training and reliability of the dog in the detection of specific drugs by odor and the witness handler's expertise in interpreting the dog's behavior, together with circumstances conducive to a dependable scent identification by the animal and a credible evaluation of its related behavior."

*Id.* at 180 (quoting *Hetmeyer v. Commonwealth*, 19 Va. App. 103, 109-10 (1994)). It is "also . . . clear that the totality-of-the-circumstances standard governing probable cause determinations in general encompasses dog-sniff assessments and provides the appropriate framework for the analysis in such circumstances." *Moore v. Commonwealth*, 85 Va. App. 634, 648 (2025).

Here, the testimony of Deputy Stutes included a great amount of detail about Vudu's training,[14] including that the two had been trained together, that he and Vudu underwent blind training and that Vudu responded how he was trained to alert when he located narcotic odor. Looking at the totality of the circumstances, it cannot be said that the circuit court erred in considering Vudu's alert in its probable cause analysis.[15] As such, the circuit court did not err in denying the motion to suppress.

---

[14] On appeal, Cason claims that there were issues with Vudu's "false positive rate" and certification. However, while Deputy Stutes testified to times that Vudu in the field alerted to "narcotic odors" and physical narcotics were not found, that is not the same as testifying to Vudu's known false positive rate, and no further questions were asked about the issue. Overall, there is nothing in the reviewable record that indicates the circuit court was wrong in stating that there was "no conflicting evidence" about Vudu's training and certification. Further, Cason's counsel at the motion suppress hearing asserted that they were not taking issue with the dog's certification. Therefore, he is unable to change his position on that fact now.

[15] Cason acknowledges that his third argument on appeal, claiming that the circuit court erred in denying the motion to suppress because Vudu's actions constituted an intrusion and a search, was not one that he made to the circuit court. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of

## II. Mitigation Letter

"On appeal, we presume the judgment of the trial court is correct and the burden is on the appellant to present to us a sufficient record from which we can determine whether the trial court has erred in the respect alleged by appellant." *Bay v. Commonwealth*, 60 Va. App. 520, 528 (2012). "When the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignments of error affected by such omission will not be considered." Rule 5A:8(b)(4)(ii). "If . . . the transcript [or statement of facts] is indispensable to the determination of the case, then the requirements for making the transcript [or statement of facts] a part of the record on appeal must be strictly adhered to. This Court has no authority to make exceptions to the filing requirements set out in the Rules." *Shiembob v.*

---

justice." Rule 5A:18. The objection "must be both specific and timely—so that the trial judge would know the particular point being made in time to do something about it." *Hogle v. Commonwealth*, 75 Va. App. 743, 755 (2022) (quoting *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019)). "If a party fails to timely and specifically object, he waives his argument on appeal." *Id.* Cason therefore failed to preserve his argument for appeal. Observing this, he asks this Court to consider his argument under the ends of justice exception to Rule 5A:18.

"'The ends of justice exception is narrow and is to be used sparingly,' and applies only in the extraordinary situation where a miscarriage of justice has occurred." *Holt v. Commonwealth*, 66 Va. App. 199, 209 (2016) (en banc) (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 220-21 (1997)). Whether to apply the ends of justice exception involves two questions: "(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice." *Commonwealth v. Bass*, 292 Va. 19, 27 (2016) (quoting *Gheorghiu v. Commonwealth*, 280 Va. 678, 689 (2010)). "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Holt*, 66 Va. App. at 210 (quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009)). "In order to avail oneself of the exception, [the appellant] must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." *Id.* (alteration in original) (quoting *Redman*, 25 Va. App. at 221). In order "to show that a miscarriage of justice *has* occurred, thereby invoking the ends of justice exception, the appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or the record must affirmatively prove that an element of the offense did not occur." *Quyen Vinh Phan Le v. Commonwealth*, 65 Va. App. 66, 74 (2015) (quoting *Redman*, 25 Va. App. at 221-22). Cason does not assert that he was convicted for conduct that was not a criminal offense nor that the record does prove an element of the offense did not occur. As such, he has failed to meet his burden, and this Court will not consider his argument under the ends of justice exception.

*Shiembob*, 55 Va. App. 234, 246 (2009) (first alteration in original) (quoting *Turner v. Commonwealth*, 2 Va. App. 96, 99 (1986)).

Here, the record on appeal does not contain timely-filed transcripts of the trial or the sentencing hearing. The circuit court entered the final order on March 24, 2025. Under Rule 5A:8, the transcripts were due within 60 days of the entry of the final order, here by May 23, 2025. *See* Rule 5A:8. Cason did not file the transcript from his trial or sentencing hearing until June 6, 2025. Cason also failed to request an extension of time to file this transcript, nor did he file a statement of facts. *See* Rule 5A:8(c).

Because the record does not include a timely-filed trial or sentencing transcript or a written statement of facts in lieu of such transcripts, we must consider whether one is indispensable to a determination of the assignment of error on appeal. *See Bay*, 60 Va. App. at 528-29; *Anderson v. Commonwealth*, 13 Va. App. 506, 508 (1992). "Whether the record is sufficiently complete to permit our review on appeal is a question of law subject to our *de novo* review." *Bay*, 60 Va. App. at 529.

Cason claims that the circuit court erred by not permitting a certain mitigation letter to be used at sentencing. Cason claims that the Commonwealth objected to the letter on hearsay and authentication grounds. On appeal, the Commonwealth asserts that Cason did not proffer the letter's contents. A sentencing judge has wide discretion in the evidence to be admitted during sentencing, and "[h]earsay testimony may be admissible in a sentencing hearing if it has 'some indicia of reliability.'" *Meekins v. Commonwealth*, 72 Va. App. 61, 72 (2020) (quoting *Alger v. Commonwealth*, 19 Va. App. 252, 258 (1994)). Without a timely-filed sentencing transcript, or statement of facts in lieu of a transcript, this Court cannot evaluate his arguments nor determine if he properly preserved his argument. Thus, we conclude that a transcript or a written statement of facts in lieu of a transcript is indispensable in resolving this issue on appeal. *See Smith v.*

- 10 -

*Commonwealth*, 32 Va. App. 766, 772 (2000). As Cason failed to provide a timely-filed transcript or a written statement of facts in lieu of a transcript necessary to resolve his assignments of error, this Court will not consider them. Rule 5A:8(b)(4)(ii).

CONCLUSION

For the foregoing reasons, the judgment of the circuit court is affirmed.

*Affirmed.*